'No. 22,303.

*In re* JOSIE DUNKERTON, *Petitioner.*

SYLLABUS BY THE COURT.

STATUTE—*Establishing State Industrial Farm for Women—Statute Constitutional.* Chapter 298 of the Laws of 1917, establishing a state industrial farm for women, does not violate section 1 of the fourteenth amendment to the constitution of the United States, nor section 1 of the bill of rights of the constitution of the state of Kansas, and does not deny the equal protection of the law to women convicted of offenses punishable by imprisonment.

Original proceeding in habeas corpus. Opinion filed March 8, 1919. Writ denied.

*A. M. Van Etchen,* and *Bert Van Louven,* both of Coffeyville, for the petitioner.

*Alfred G. Armstrong,* county attorney, for the respondent; *Thurman Hill,* of Independence, of counsel.

The opinion of the court was delivered by

MARSHALL, J.: Josie Dunkerton presents an application for a writ of habeas corpus. Notice of the hearing of the application has been given, and the matter is submitted on its merits. The petitioner is confined on the state industrial farm for women, under conviction for violating section 1 of chapter 215, Laws of 1917, commonly known as the "bone-dry" law. She argues that the act under which she is confined (Laws 1917, ch. 298) is unconstitutional, for the reason that it contravenes section 1 of the fourteenth amendment to the constitution of the United States, and for the further reason that it contravenes section 1 of the bill of rights of the constitution

of the state of Kansas, in this, that the act denies the equal protection of the law to women over twenty-five years of age. To support this argument, the petitioner contends that, in every case where a woman is convicted of violating any criminal law, and punishment by imprisonment is prescribed, the act takes from the trial court the right to impose the minimum penalty on her; that it takes from that court the right to parole women; that, under the act, women must be sentenced to the penitentiary; and that in these respects the punishment of women is more severe than the punishment of men for the same offense.

Boys under the age of sixteen years, who commit offenses punishable by imprisonment, may be sent to the state reform school. (Gen. Stat. 1915, § 10081.) Girls under the age of eighteen years who commit similar offenses may be sent to the industrial school for girls. (Gen. Stat. 1915, § 10108.) Any male person between the ages of sixteen and twenty-five, who shall be convicted for the first time of any offense punishable by confinement in the state penitentiary, may be sent to the Kansas state industrial reformatory. (Gen. Stat. 1915, § 10053.) Under these statutes boys and girls, and men and women are not treated alike. Women cannot be sent to the state industrial reformatory. Boys over sixteen years of age cannot be sent to the state reform school, while girls between sixteen and eighteen years of age may be sent to the industrial school. Prior to the passage of the act now questioned, a woman over eighteen and under twenty-five, who committed an offense punishable by imprisonment in the penitentiary was sent to that institution. She could not be sent to any one of the other three institutions. Reformation and education are the primary objects of the reform school, of the state industrial reformatory, and of the industrial school. Punishment is incidental only. These institutions are primarily schools, not prisons. The constitutionality of the acts creating them, and of the acts providing for confinement of violators of the law in them, has not heretofore been questioned on the ground now presented.

The statute under consideration establishes an industrial farm for women, to which all women above the age of eighteen

*In re* Dunkerton.

years, who shall be convicted of any offense against the criminal laws of this state, must be sent. Section 5 of the act reads:

"Every female person, above the age of eighteen years, who shall be convicted of any offense against the criminal laws of this state, punishable by imprisonment, shall be sentenced to the state industrial farm for women, but the court imposing such sentence shall not fix the limit or duration of the sentence. The term of imprisonment of any person so convicted and sentenced shall be terminated by the state board of administration, as authorized by this act, but such imprisonment shall not exceed the maximum term provided by law for the crime for which the person was convicted: Provided, that where the person, so convicted and sentenced to said industrial farm for women, is not more than twenty-five years of age and said conviction is for her first offense, the board of administration may parole or release such person under rules and regulations prescribed by said board before the expiration of the minimum term, but in all other cases, the person so committed to said institution shall not be eligible to parole by the board of administration until the expiration of the minimum term fixed by law for the punishment of the offense for which she has been convicted: Provided further, that where any person has been committed to such institution on conviction for murder in the first or second degree, such person shall not be released from said institution until the expiration of the term for which such person is sentenced, except by action of the governor exercising his pardoning or parole power." (Laws 1917, ch. 298, § 5.)

The petitioner directs the attention of the court to part of section 14, and to all of section 22, of the act. The material part of section 14 reads:

"The state board of administration shall provide equipment for the regular employment of all inmates of the state industrial farm for women, by erecting shops for the manufacture of goods and utensils and the purchase of farm machinery and stock which will permit light forms of agriculture, such as truck gardening, chicken raising and dairying, not to the exclusion of the cultivation of cereals and grasses. It shall be the duty of the superintendent to provide for the daily labor of all inmates according to their capacity and adaptability."

The purpose of the act of 1917 is to ameliorate the condition of women who have been convicted of an offense punishable by imprisonment. Under the act women are not subjected to the debauching influence of the county jail and of the penitentiary and of the close confinement therein, but are placed in a field where labor is pleasant and restraint is limited, and where the evil influence of other persons convicted of crime is minimized. The act seeks to improve, to educate, and to build up; not to punish. The court is asked to say that the law is

unconstitutional because in accomplishing these objects it im-poses restraint on women different from that imposed on men. *Morgan v. State*, 179 Ind. 300, is cited by the petitioner. There the supreme court of Indiana held that a statute which pre-scribed a treatment of men acquitted of crime on the ground of insanity, different from that accorded women thus acquitted, denied to women the equal protection of the law, and contra-vened the fourteenth amendment to the constitution of the United States. The reasoning in that case is not convincing. The legislature may very properly determine that women con-victed of crime shall be less severely punished than men con-victed of the same crime. The number of women that commit crimes is much smaller than the number of men committing similar crimes, and that fact may be taken into consideration by the legislature, and punishment may be prescribed which recognizes that difference.

It is argued that the act of 1917 takes away from the district court the right to parole a woman convicted in that court, of any offense. The statute does not in terms so declare. It does provide that, after she has been placed on the farm, the board of administration may parole, but that does not exclude the trial court from paroling at the time judgment is rendered, or before confinement on the farm begins. There is always a de-partment of the state government with authority to parole a woman who has been convicted of an offense punishable by imprisonment, or who is confined on the industrial farm.

It is argued that sentencing a woman to the industrial farm is the same as sentencing her to the penitentiary. The in-dustrial farm is not the penitentiary; they are separate insti-tutions, operated in different ways, to accomplish different objects. The only resemblance between the two is the restraint placed upon their inmates to prevent them from leaving the institutions. The petitioner's attack on the law cannot be sus-tained, and her application for a writ of habeas corpus is denied.