GEORGIANNA BOUCHER GOSSELIN
PETITIONER FOR WRIT OF HABEAS CORPUS.

Somerset.    Opinion, December 11, 1945.

*F. Harold Dubord,* for the petitioner.

*Ralph W. Farris,* Attorney General,

*Abraham Breitbard,* Deputy Attorney General, for State.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, MUR-CHIE, JJ.

MURCHIE, J. The petitioner herein was committed to the Reformatory for Women under a mittimus issued from the Superior Court on December 22, 1944. She pleaded guilty in that Court in June 1944 to a Municipal Court complaint carried there by her appeal. The offense charged was intoxication. She was sentenced to an indefinite term in the Reformatory but the sentence was suspended and she was placed on probation for one year. Her commitment followed finding that she had violated her probation. The habeas corpus proceedings were instituted January 18, 1945.

Her petition is in the usual form alleging her imprisonment unlawful without specifying any grounds therefor but it was urged upon the Justice who heard the cause below that the statute under which the sentence was imposed is unconstitutional because it permits the confinement of women in the Reformatory for Women under indeterminate sentence upon conviction of misdemeanor for three years and thereby discriminates against them as a class, since men committed to the Reformatory for Men for offenses of the same grade may be confined there under similar sentence for no more than two years. As an alternative ground it was asserted that process which involves a penalty of imprisonment for more than one

year may not be commenced by complaint but requires indictment. The latter contention, although included in the bill of exceptions, is expressly waived in the argument presented in this Court.

The issue is nothing more than whether the petitioner is being held on process issued by competent authority in accordance with law and in proper form. *O'Malia* v. *Wentworth*, 65 Me., 129; *Hibbard* v. *Bridges*, 76 Me., 324; 25 Am. Jur. 144, Par. 2; 39 C. J. S., 425, Par. 1. Habeas corpus has been declared an appropriate remedy for one in prison under sentence imposed according to a law which contravenes constitutional safeguards, *Herrick* v. *Smith*, 1 Gray (Mass.), 1 at 49, 61 A. D., 381, at 407; *Sennott's Case*, 146 Mass., 489, 4 Am. St. Rep., 344, 16 N. E., 448; 39 C. J. S., Habeas Corpus 458, Par. 18; 25 Am. Jur. 164, Par. 29. That principle we adopt although there is authority contra. See 25 Am. Jur. 166 and 39 C. J. S., 459 with the footnotes thereto. The exceptions do not record whether the petitioner was found intoxicated in a public place, the punishment for which was then found in R. S. 1930, Chap. 137, Sec. 18, or upon the premises of a common carrier (see R. S. 1930, Chap. 64, Sec. 70), but the arguments offered on her behalf and for the official who produced her in court and answered to the process make it clear that the former is the case and the statutory punishment for a first offense, applicable to all persons not eligible for commitment to the Reformatories and other corrective institutions, is a fine of not more than $10 or imprisonment for not more than 30 days. The statute fixing the punishment draws no distinction between men and women or between minors and persons of age.

We refer to the alleged ground for exception waived by the petitioner because it is so obviously a companion piece to that on which she continues to rely and consideration of it throws so definite a light thereon. If an indeterminate sentence to the Reformatory for Women constitutes punishment measured by imprisonment for a term of three years and a sentence to the

Reformatory for Men corresponding punishment for terms of two years or five, depending upon the grade of the offense involved, it would be requisite under our law that prosecution in either case be commenced by indictment. Our constitutional provision, contained in Article 1, Sec. 7, provides only that:

"No person shall be held to answer for a capital or infamous crime, unless on a presentment or indictment of a grand jury . . ."

with language excepting impeachment, cases arising in the armed services and those "usually cognizable by a justice of the peace." Capital crimes or offenses have been unknown in this jurisdiction since capital punishment was abandoned in 1887, P. L. 1887, Chap. 133, Sec. 1, and we have no crimes generally classified as infamous, but a classification of felonies as major crimes and misdemeanors as crimes of lesser grade was declared by statute as far back as the revision of 1841. In R. S. 1841, Chap. 167, Sec. 2, as now, the basis for distinction was whether the offense was punishable by imprisonment in the State Prison. At that early date the applicable section of the statute enumerated certain crimes as felonies, and followed the enumeration with a general provision declaring all crimes punishable with death or imprisonment in the State Prison to be such. In the succeeding revision the enumeration was dropped and the general recital applicable to punishment by death or imprisonment in the State Prison retained, as was the case in the revision of 1871. See R. S. 1871, Chap. 131, Sec. 9 and R. S. 1857, Chap. 131, Sec. 9. The language used in R. S. 1944, Chap. 132, Sec. 1 is identical with that appearing in the revision of 1883 and each subsequent one. See R. S. 1883, Chap. 131, Sec. 9; R. S. 1903, Chap. 132, Sec. 10; R. S. 1916, Chap. 133, Sec. 11; R. S. 1930, Chap. 143, Sec. 11. The effect of this definitive provision has been controlled at all times since the revision of 1857 by a general law directing that all

sentences of imprisonment for the term of one year or more "shall be in the state prison." See R. S. 1857, Chap. 135, Sec. 2; R. S. 1871, Chap. 135, Sec. 2; R. S. 1883, Chap. 135, Sec. 3; R. S. 1903, Chap. 136, Sec. 3; R. S. 1916, Chap. 137, Sec. 3; R. S. 1930, Chap. 147, Sec. 3; R. S. 1944, Chap. 136, Sec. 4. Decided cases make it clear that the test to be applied in determining whether indictment, as distinguished from complaint, is requisite to the commencement of prosecution is whether the offense charged is punishable by imprisonment for a year, in which case no one may be held to answer a charge except under the indictment of a Grand Jury. *Butler et al., Petitioners for Habeas Corpus*, 84 Me., 25, 24 A., 456, 17 L. R. A., 764; *State* v. *Arris*, 121 Me., 94, 115 A., 648, 24 A. L. R., 990; *State* v. *Vashon*, 123 Me., 412, 123 A., 511.

Criminal law in ancient times, in this State as elsewhere, had the punishment of criminals as its principal objective and sought to make the measurement of it proportionate to the grade of the offense without regard to the age or sex of the criminal, although Houses of Correction were required to be constructed in each and every County of the State in the early days of our statehood, P. L. 1821, Chap. CXI. That the primary purposes of the law were the punishment of offenders and the suppression of crime is undoubted but that a supplemental purpose involved the element of reform is apparent in the provision of the closing section of the law providing for Houses of Correction, which authorized the discharge of inmates therefrom on their application when "the ends" of the commitment had been answered.

Beginning with the establishment of a State Reform School in 1853 (P. L. 1853, Chap. 19) reform, as distinguished from punishment, has been an avowed objective of our penal system. Under that law any boy under the age of 18 years convicted of an offense punishable by imprisonment (other than assault and battery) might be sentenced to the State Reform School or to the punishment provided by law for the particular of-

fense. All sentences to the State Reform School were required to be in the alternative and if the trustees thereof found a boy sentenced to confinement therein incorrigible (or that it was inexpedient to receive him) their certificate to that effect on the mittimus would make the alternative sentence effective. This was the forerunner of a series of enactments in the field of reform which have provided not only a set of reform institutions available to attempt the reclamation of persons of both sexes from criminal tendencies but a system of indeterminate sentence and parole which has an identical objective.

The institutions named in the order of their establishment are the State School for Boys, as our State Reform School was designated in 1903, P. L. 1903, Chap. 144, R. S. 1944, Chap. 23, Secs. 75 to 85 inclusive; the State School for Girls, which the earlier Maine Industrial School for Girls, established as a private institution by P. & S. L. 1872, Chap. 183 and given public status by P. L. 1873, Chap. 141, became in 1915, P. L. 1915, Chap. 152, R. S. 1944, Chap. 23, Secs. 86 to 94 inclusive; the Reformatory for Women, established by P. L. 1915, Chap. 206, R. S. 1944, Chap. 23, Secs. 51 to 64 inclusive; and the Reformatory for Men, established by P. L. 1919, Chap. 182, R. S. 1944, Chap. 23, Secs. 65 to 73 inclusive. The government of the two schools was vested in a single board designated as the "Trustees of Juvenile Institutions" by P. L. 1911, Chap. 150. Provision was made that boys between the ages of eight and sixteen should not be given a record of conviction for any crime other than "juvenile delinquency" except for offenses punishable with imprisonment for life by P. L. 1919, Chap. 58. This provision was made applicable to any child under 17 years of age by P. L. 1921, Chap. 129. Our present statute law dealing with this subject matter is found in R. S. 1944, Chap. 133, Secs. 2 and 4 to 7 inclusive.

As now constituted our Reformatory for Women is available for all females between the ages of 16 and 40, our Reformatory for Men for all males from 16 to 36 years of age and our State

Schools take care of boys over 11 and girls over 9 up to 17 years in each case. There is an overlapping of one year for both males and females with identical provision that an incorrigible inmate of either school over 16 years of age may be transferred to the appropriate Reformatory.

Many years after the concept of reform as distinguished from punishment began to control legislative policy in our criminal law a system of indeterminate sentence and parole was developed to further it, P. L. 1913, Chap. 60. The enactment of this law preceded the construction of our Reformatories for Women and Men by only a few years. For those institutions originally there was no upper age limit for either sex but those now effective were provided for males in 1923 and for females in 1931, P. L. 1923, Chap. 58 and P. L. 1931, Chap. 17. The original legislation carried identical provisions fixing the maximum periods of confinement under indeterminate sentences for felonies and misdemeanors at five years and three years respectively, except that men were not subject to it for misdemeanors unless after prior conviction of crime, the maximum for male first offenders, except where felonies were involved, being fixed at six months. P. L. 1915, Chap. 206, Sec. 7 and P. L. 1919, Chap. 182, Sec. 7. From the time of the establishment of the Reformatory for Women to date the maximum indeterminate sentence for misdemeanors has been three years. That applicable to male first offenders was fixed originally at six months and changed by P. L. 1941, Chap. 140 to one year, the original three-year maximum for other males being reduced to two. There has been no time during the entire history of our legislation on the subject matter when male and female offenders have been accorded exactly identical treatment.

The issue presented in the case is the constitutionality of legislation which permits the confinement of women under indeterminate sentences, for the purpose of intended reform, during a maximum period longer than that applicable to men

subject to similar sentences for offenses of corresponding grade. Unconstitutionality is urged on the basis of declarations in two decisions of the Kansas Court and one in our Mother Commonwealth, which call attention to the fact that the statutes under consideration contained no element of discrimination. *Re Petition of Josie Dunkerton,* 104 Kan., 481, 179 P., 347, 3 A. L. R., 1611; *State* v. *Heitman,* 105 Kan., 139, 181 P., 630, 8 A. L. R., 848; *Platt* v. *Commonwealth,* 256 Mass., 539, 152 N. E., 914. Both Kansas cases involve Chapter 298 of the Laws of 1917 and were decided in 1919. The Massachusetts case relates to G. L., Chap. 279, Secs. 16, 17, 18, 31, 32 and 33 (as effective in 1925).

The Kansas statute provided for the confinement of women convicted of crime in a state industrial farm under indeterminate sentences but fixed a maximum term for each offense measured by that applicable to the punishment provided by law. The Massachusetts statute provided identical maximum periods of confinement under indeterminate sentences for men and women. Referring to the particular legislation the Kansas Court, in the earlier of the two cases cited from that jurisdiction, laid some emphasis on the limitation imposed with reference to the maximum period of confinement and made comment that the legislature might:

"very properly determine that women convicted of crime ... be less severely punished than men convicted of the same crime"

and Chief Justice Rugg noted in the Massachusetts case that the provisions:

"applicable to sending men convicted of misdemeanors to the ... reformatory are similar, in the particulars of which complaint ... is made, to those relating to sending women to the reformatory for women."

A great deal of the discussion in the Massachusetts case and the later Kansas decision recognizes the trend of penology and of legislation toward abolishment of the theory of mere punishment (which the Kansas Court says was designed to accomplish vengeance or retribution) and establishment of the policy of reform. The Massachusetts case involved the issue of indeterminate sentences to reform institutions carrying the possibility of confinement for misdemeanors during periods greatly in excess of the punishments provided otherwise by law. It calls attention to the history of legislation on the subject matter and stresses the burden placed upon the courts:

> "to determine on the evidence in each case whether the purely punitive sentence for a specified period, or the indefinite sentence with a reformative purpose even though invoking longer restraint, is better for the common welfare."

Immediately prior to the sentence first quoted from the Massachusetts case (*Platt* v. *Commonwealth*), which may be said to lend some color of support to the argument made on behalf of the petitioner by its reference to the corresponding restraints in reform institutions applicable to both men and women, are declarations which seem very much in point to the present issue. These are:

> "It is too plain for discussion that the Legislature may classify according to sex for purposes of punishment and reformation those convicted of crime. There is no inequality between men and women as to their liability to sentence under the statutes even *if it be assumed that such inequality could rightly be urged.*"

We have emphasized the closing words of the quoted excerpt to call attention to the fact that the decided case makes

no declaration that equality of treatment for men and women is essential. There is clear implication that such equality is not requisite in the quotation already made from the Kansas case, *Re Petition of Josie Dunkerton,* supra. The latter, it is true, suggests that any inequality should favor women as a class, rather than men, but both cases recognize that classification is a matter for the legislative department of government rather than the judicial. The power of reasonable classification has been declared on numerous occasions by many courts. A considerable review of cases on the point is contained in *State* v. *King,* 135 Me., 5, 188 A., 775. There is no necessity for repetition at this time. It is only when legislative classification is arbitrary or irrational that courts may intervene on constitutional grounds.

Whether the members of this Court individually would have considered that less time would be required to accomplish the reform of male first offenders than would be requisite for other males or for females or that two years would be sufficient for more hardened males although the reform of women would require three years is not important. Our power and authority collectively is to decide no more than that legislative decision is reasonable or unreasonable. The petitioner was incarcerated in the Reformatory for Women instead of being sentenced to a small fine or a brief sojourn in jail on the theory (to quote Chief Justice Rugg) that her reform was "better for the common welfare" than "a purely punitive sentence." Legislative progress in the field of reform would be impossible if the law applicable to each and every reform institution had to be checked every time a change seemed desirable in one of them. If the sentence imposed on the petitioner could be considered as representing punishment for her offense according to the standards of ancient times, her prosecution would have failed at the outset because commenced by complaint rather than indictment. Since it cannot, it must be regarded as intended to accomplish her reform according to a legislative judgment or

classification that can not be considered as either unreasonable or improper. The statute under which she is held carries appropriate provisions for her parole as well as for her discharge from the institution when it appears to the authority in charge that she "has reformed" or "is no longer in need of supervision," R. S. 1944, Chap. 23, Secs. 58 and 59. Under the circumstances the mandate must be

*Exceptions overruled.*