Commonwealth *v.* Daniels, Appellant.

Argued December 16, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Carolyn Engel Temin,* Assistant Defender, with her, *Leonard Packel* and *Vincent J. Ziccardi,* Assistant Defenders, *Martin Vinikoor,* First Assistant Defender, and *Herman I. Pollock,* Defender, for appellant.

*Arlen Specter,* District Attorney, with him *Gillian R. Gilhool* and *Alan J. Davis,* Assistant District Attorneys, and *Richard A. Sprague,* First Assistant District Attorney, for appellee.

*Frank P. Lawley, Jr.,* Deputy Attorney General, with him *Edward Friedman,* Attorney General, for Commonwealth, appellee.

OPINION BY JACOBS, J., June 16, 1967:

The issue presented in this appeal is the constitutionality of the Muncy Act, the state statute providing for sentencing of women to the State Correctional Institution at Muncy.

Appellant, Jane M. Daniels, was tried before the Hon. JAMES L. STERN without a jury on charges of burglary, aggravated robbery, carrying a concealed deadly weapon, and possession of a firearm after conviction of a crime of violence. She was found guilty of robbery on May 3, 1966, and Judge STERN sentenced her that same day to a one to four year prison term in Philadelphia County Prison. On June 3, 1966, thirty-one days after the imposition of this sentence, Judge STERN vacated the original sentence and resentenced appellant to an indefinite term of imprisonment in the State Correctional Institution at Muncy. In accordance with the Muncy Act, the sentence was a general one fixing no maximum or minimum. From that sentence appellant appealed to this court, contending that her sentence to an indeterminate term at Muncy is improper since the applicable statute provides for an unconstitutional distinction between males and females as to sentencing.

The sentencing provisions of the act, herein referred to as the Muncy Act, provide as follows:

"Any court of record in this Commonwealth, exercising criminal jurisdiction, may, in its discretion, sentence to the State Industrial Home for Women (State Correctional Institution at Muncy) any female over sixteen years of age, upon conviction for, or upon pleading guilty of, the commission of any criminal offense punishable under the laws of this State. After due no-

tice given to all courts of record exercising criminal jurisdiction in this Commonwealth by the board of trustees of said State Industrial Home for Women that the said home is prepared to receive *all women so convicted or pleading guilty of an offense punishable by imprisonment for more than a year who shall be sentenced to imprisonment, such sentence in all cases shall be to confinement in said State Industrial Home for Women.* Every sentence imposed pursuant to this act shall be merely a general one to the State Industrial Home for Women, and shall not fix or limit the duration thereof. The duration of such imprisonment, including the time spent on parole, shall not exceed three years, except where the maximum term specified by law for the crime for which the prisoner was sentenced shall exceed that period, in which event such maximum term, including the time spent on parole, shall be the limit of detention under the provisions of this act." 1913, July 25, P. L. 1311, §15; 1925, May 14, P. L. 697, §1; 1931, June 22, P. L. 859, §1, 61 P.S. §566 (emphasis added).

## I.

The first question that must be answered is whether Judge STERN had the power to vacate the original sentence and resentence appellant. Since the second sentence was imposed after the term at which appellant was convicted and more than 30 days after her conviction, Judge STERN was impowered to vacate the original sentence only if it was illegal. See Act of June 1, 1959, P. L. 342, §1, 12 P.S. §1032; *Commonwealth ex rel. Perrotta v. Myers,* 203 Pa. Superior Ct. 287, 201 A. 2d 292 (1964); *Commonwealth ex rel. Firmstone v. Myers,* 207 Pa. Superior Ct. 453, 217 A. 2d 851 (1966). The legality of the original sentence depends on whether the Muncy Act is the exclusive authority under

which Jane Daniels could have been sentenced. Judge STERN concluded that he did have to sentence appellant under the Muncy Act and that his previous imposition of one to four year sentence in the Philadelphia County prison was illegal. We agree with Judge STERN's conclusion that sentence to Muncy is *mandatory* where a woman is convicted of a crime punishable by imprisonment for more than a year and some imprisonment is to be imposed.

In the original Muncy Act passed in 1913, sentence to Muncy was within the discretion of the court. Act of July 25, 1913, P. L. 1311, §15. The legislature in 1925 added the following language: "After due notice given to all courts of record exercising criminal jurisdiction in this Commonwealth by the board of trustees of said State Industrial Home for Women that the said home is prepared to receive all women so convicted or pleading guilty of an offense punishable by imprisonment for more than a year who shall be sentenced to imprisonment, *such sentence in all cases shall be to confinement in said State Industrial Home for Women.*" 1925, May 14, P. L. 697. (Emphasis added). The language of this amendment is simple and plain. No ambiguity whatsoever is present. Where the language of a statute is plain and unambiguous it must be given its obvious meaning. *Davis v. Sulcowe*, 416 Pa. 138, 205 A. 2d 89 (1964). It is clear to us that the legislature intended to make sentence to Muncy the sole method of incarceration for any woman convicted of a crime punishable by more than a year of imprisonment.

However, it is urged that the act of February 8, 1842, P. L. 12, §11, 19 P.S. §1022, authorizes the sentencing of women for more than one year to the Philadelphia County Prison. Whether this 1842 Act was impliedly repealed by the Muncy Act need not be decided because the legislature specifically repealed it by

the Act of December 27, 1965, P. L. 1237, 61 P.S. §460.5. The latter act did not specifically repeal the Muncy Act nor did it by implication since it speaks only of sentences where a maximum is imposed and the Muncy Act provides only for a general sentence to Muncy.

Appellant having been convicted of a crime punishable by more than one year of imprisonment,[1] the original sentence to the Philadelphia County Prison was illegal and Judge STERN acted properly in resentencing appellant.

## II.

Appellant contends that the sentencing provisions of the Muncy Act, supra, are unconstitutional in that they deny her by reason of her sex the equal protection of law as required by the 14th Amendment to the United States Constitution.[2]

The Muncy Act does provide a different sentence for women than for men convicted of the same crime. Where a woman is sentenced to imprisonment the sentence is a general one to the institution at Muncy and the limits of the imprisonment are not fixed in the sentence.

A male offender sentenced to imprisonment for robbery is sentenced under the Act of June 19, 1911, P. L. 1055, §6, as amended, 19 P.S. §1057. That act calls for a sentence for an indefinite term, but directs the judge to fix the minimum and maximum limits with the further proviso that the maximum may not exceed

---

[1] Under the Act of June 24, 1939, P. L. 872, §704, 18 P.S. §4704, the crime of robbery is punishable by a sentence not exceeding ten years.

[2] The Equal Protection Clause of the 14th Amendment provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

the maximum prescribed by law for such offense and the minimum shall never exceed one-half of the maximum prescribed by the judge.

In asking this court to declare a part of the Muncy Act unconstitutional, appellant has assumed a very heavy burden of proof. There is a strong presumption in favor of the constitutionality of acts of the legislature, e.g., *New York v. O'Neill,* 359 U.S. 1, 79 S. Ct. 564, 3 L. ed. 2d 585 (1959); *Loomis v. Philadelphia School District Board,* 376 Pa. 428, 103 A. 2d 769 (1954), and this court will not declare an act of the legislature to be unconstitutional unless it is shown to be "clearly, palpably and plainly" in violation of the constitution. *Milk Control Commission v. Battista,* 413 Pa. 652, 659, 198 A. 2d 840 (1964); *Daly v. Hemphill,* 411 Pa. 263, 271, 191 A. 2d 835, 840 (1963); *Greenville Borough v. Guerrini,* 208 Pa. Superior Ct. 42, 46, 220 A. 2d 366 (1966).

The legislature in enacting the Muncy Act has decided that women as a class are to be treated differently than men as to the term and manner of incarceration for crimes. The fact that legislation might impose greater burdens on one class of citizens does not in itself violate the Equal Protection Clause. As was said by the Supreme Court in *Rinaldi v. Yeager,* 384 U.S. 305, 86 S. Ct. 1497, 16 L. ed. 2d 577, 580 (1966), that clause "imposes a requirement of some rationality in the nature of the class singled out. To be sure, the constitutional demand is not a demand that a statute necessarily apply equally to all persons. 'The Constitution does not require things which are different in fact . . . to be treated in law as though they were the same. . .' Hence, legislation may impose special burdens upon defined classes in order to achieve permissible ends." In a recent case the Supreme Court of this state held that imposing the added burden of oral exams on women candidates for police sergeant did not

violate the Equal Protection Clause. *Wells v. Civil Service Commission,* 423 Pa. 602, 225 A. 2d 554 (1967). A classification by the legislature would violate the Equal Protection Clause only if it did not rest upon a difference between the classes that bore a reasonable relation to the purposes of the legislation. E.g., *McLaughlin v. Florida,* 379 U.S. 184, 85 S. Ct. 283, 13 L. ed. 2d 222 (1964); *Hoyt v. Florida,* 368 U.S. 57, 82 S. Ct. 159, 7 L. ed. 2d 118 (1961); *Milk Control Commission v. Battista,* supra. The test stated by our Supreme Court is that a classification violates the Equal Protection Clause if it is shown to be patently arbitrary or utterly lacking in rational justification. *Milk Control Commission v. Battista,* supra. Of course, where fundamental rights and personal liberties may be affected by a classification, as they are here, the classification must be closely scrutinized and carefully confined. *Harper v. Virginia State Board of Elections,* 383 U.S. 663, 86 S. Ct. 1079, 16 L. ed. 2d 169, 174 (1966).[3]

Is there a rational basis for the classification, i.e., a reasonable connection between the classification by sex and the purposes of the legislation? The broad

---

[3] In certain cases where a classification results in restricting personal liberties such as freedom of speech or which involve a racial classification, the classification is specially suspect and the state in the first instance must show a subordinating interest that is compelling. *Griswold v. Connecticut,* 381 U.S. 479, 85 S. Ct. 1678, 14 L. ed. 2d 510 (1965); *McLaughlin v. Florida,* supra; *Shelton v. Tucker,* 364 U.S. 479, 81 S. Ct. 247, 5 L. ed. 2d 231 (1960); *Bates v. Little Rock,* 361 U.S. 516, 80 S. Ct. 412, 4 L. ed. 2d 480 (1960). But in those cases, except ones involving racial discrimination, it is not the classification that is in question, but it is the necessity of the law itself that must be justified once it is shown that it invades the fundamental rights of certain groups. Unlike those cases, here there can be no question of the necessity of the punishment and rehabilitation of those convicted of crime, nor is there any question that a punitive statute is the type that does justifiably subordinate certain fundamental rights of those convicted.

purpose of the legislation was to provide for the punishment and rehabilitation of prisoners. Different types of incarceration for the same crimes are regularly imposed both for classes of individuals (e.g., juveniles,[4] sex offenders, recidivists, criminally insane), as well as among separate individuals where judicial discretion in imposing sentence may be allowed by the legislature. The only requirement for different treatment for different classes of persons is that the class exhibits characteristics that justify the different treatment. As was said by the Oregon Supreme Court in upholding a statute applying different treatment for sex offenders: "It is the province of the legislature to establish the penalties for the violation of the various criminal statutes and if the penalties are founded upon an arguably rational basis we have no authority to hold that they are invalid." *Jensen v. Gladden*, 231 Ore. 141, 372 P. 2d 183, 185 (1962). This court is of the opinion that the legislature reasonably could have concluded that indeterminate sentences should be imposed on women as a class, allowing the time of incarceration to be matched to the necessary treatment in order to provide more effective rehabilitation. Such a conclusion could be based on the physiological and psychological make-up of women, the type of crime committed by women, their relation to the criminal world, their roles in society, their unique vocational skills and pursuits, and their reaction as a class to imprisonment, as well as the number and type of women who are sentenced to imprisonment rather than given suspended sentences. Such facts could have led the legislature to conclude that a different manner of

---

[4] See *Commonwealth ex rel. Clawges v. Claudy*, 173 Pa. Superior Ct. 410, 98 A. 2d 225 (1953), where this court held that the act providing for sentence of juvenile offenders to the Pennsylvania Industrial School at Camp Hill was not a denial of equal protection or due process.

punishment and rehabilitation was necessary for women sentenced to confinement.[5]

To support her attack on the legislation appellant argues that because she is a woman she has received a maximum sentence of ten years (the maximum for robbery); that if she were a man she would have received a maximum term of four years (the term imposed before the sentence was corrected to conform with the Muncy Act requirements); and that this difference in maximum terms solely because of her sex demonstrates a violation of the Equal Protection Clause of the 14th Amendment. This argument rests on an invalid assumption, viz., that a man committing this crime would have received a maximum term of four years. Judge STERN'S prior sentence of one to four years was a sentence imposed upon Jane Daniels, a female, and we cannot speculate as to what the sentence would have been had the person robbing the bar in question been a male. She also argues that solely because she is a woman she will not become eligible for parole for at least three years and will not be discharged from the sentence for ten years. This argument is not legally accurate. The exclusive power of parole where the maximum sentence is two years or more is vested in the Pennsylvania Board of Probation and Parole by the Act of August 6, 1941, P. L. 861, as amended, 61 P.S. §§331.1-331.34. The board has such exclusive power over the inmates of Muncy where as

[5] A 1965 study of the Pennsylvania Board of Parole (Report on Women Parolees, March 31, 1965) records that over a ten year period (1947-1957) 16% of the women were returned to prison while the rate for men was 30%. Regardless of whether this is attributable to the different rehabilitation program for women or whether it is attributable to some inherent difference between males and females in their relation to crime, it does demonstrate that there is *some* difference between men and women in regard to imprisonment and parole.

here the maximum of the crime for which the inmate was sentenced is two years or more. 61 P.S. §331.31. Except in the case of prisoners condemned to death or serving life imprisonment the board has the power to parole any woman prisoner the day she enters Muncy[6] but in the case of a male prisoner such power may not be exercised until the minimum term fixed by the court has expired. 61 P.S. §331.21. Appellant apparently assumes that a woman in Muncy cannot be discharged from her sentence until the maximum for the crime has expired but offers no authority to support this assumption. In fact, the Pennsylvania Board of Probation and Parole has been acting on the belief it has the power under the Muncy Act to terminate a woman's sentence after three years, although it has no power to terminate a man's sentence prior to the expiration of his maximum.

In effect, appellant presents us with arguments against the legislation without supporting data and asks us to reweigh the wisdom of the act of the legislature. This we cannot do. As the United States Supreme Court once said, "at most these arguments do no more than demonstrate that the question is debatable. And, if so, the effect of the action of the state legislature in passing the statute was to decide this debatable question against the view now advanced by appellant; and since we are unable to say that such a determination by the legislature is clearly unfounded, we are precluded from overturning it." *Bayside Fish Flour Co. v. Gentry*, 297 U.S. 422, 430, 56 S. Ct. 513, 80 L. ed. 772, 778 (1936). Cf. *Winston v. Moore*, 244 Pa. 447, 91 A. 520 (1914).

We have examined the recent United States Supreme Court decisions concerning the Equal Protection Clause

---

[6] See *Commonwealth ex rel. Clawges v. Claudy*, supra, note 4, at p. 416.

and find them to be harmonious with our decision in the present case. In *Rinaldi v. Yeager*, supra; *Baxstrom v. Herold*, 383 U.S. 107, 86 S. Ct. 760, 15 L. ed. 2d 620 (1966) ; *Carrington v. Rash*, 380 U.S. 89, 85 S. Ct. 775, 13 L. ed. 2d 675 (1965) ; and *McLaughlin v. Florida*, supra, in which various state laws were held invalid as in violation of the equal protection clause, the court found that the reasons given to support the classifications did not relate to the purposes of the legislation. On the contrary, in the present case there are differences between the sexes that the legislature could have concluded were related to the purposes of the legislation and these stand unrefuted by appellant. This situation is similar to that in *Hoyt v. Florida*, supra, in which the Supreme Court upheld different jury service laws for men and women as not in violation of the 14th Amendment.

Our research indicates that all the states that have considered statutes similar to the Muncy Act have upheld them as not in violation of the 14th Amendment. *Ex parte Gosselin*, 141 Me. 412, 44 A. 2d 882 (1945) ; *Ex parte Brady*, 116 Ohio St. 512, 157 N.E. 69 (1927) ; *Platt v. Commonwealth*, 256 Mass. 539, 152 N.E. 914 (1926) ; *State v. Heitman*, 181 P. 630 (Kans. 1919).

In short, appellant has not produced the facts necessary to refute the conclusion of the legislature that women require a different type and manner of incarceration. Were we to decide that the legislation in question was "patently arbitrary or utterly lacking in rational justification" in its application to women we would be putting allegations based on speculation ahead of the studied decision of the legislature with all of its fact-finding apparatus.

Judgment of sentence affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

I respectfully dissent.

In my view, the Muncy Act constitutes an arbitrary and invidious discrimination against women offenders as a class.

The statute concededly requires longer sentences for women than for men convicted of the same crime. In the case of women offenders, the judge is precluded from exercising his discretion so as to achieve an equitable matching of crime and punishment. All women sentenced for offenses punishable by imprisonment for more than one year *must* be sentenced to the maximum permissible term. Men, on the other hand, *may* be sentenced to lesser terms.

Furthermore, the statute robs the trial judge of his discretion in the area of sentencing, and therefore lends itself to arbitrary and erratic administration by nonjudicial authorities. Thus, in theory, a woman sentenced under the provisions of the Muncy Act receives no minimum sentence. In practice, however, she will be required to spend a substantial period of time in prison before referral for parole, because of the rigid schedules of "time to be served" established by the Muncy authorities.[1]

In the instant case, the trial judge attempted to sentence the defendant to a term of one to four years. Were it not for the fact that she is a woman, she would have become eligible for parole in one year. Even if never released on parole, she would have been completely discharged after four years. Because of

---

[1] According to a letter from the Superintendent of Muncy to the Voluntary Defender, the schedule is as follows:

| Sentence | Time to be served |
|---|---|
| 3 years | 18 to 20 months |
| 5 years | 2 to 2½ years |
| 7 years | 2½ to 3 years |
| 10 years (robbery) | 2½ to 3½ years |
| 12 years (voluntary manslaughter) | 4 to 4½ years |
| 15 years | 3½ to 4½ years |

the mandatory language of the Muncy statute, however, she may serve a term whose maximum is 10 years. Because of the scheme of parole referral in force at Muncy, she will probably serve a minimum of three years at that institution. It is therefore apparent that the Act imposes heavier sentences on women in general and has worked to impose a more severe punishment on defendant Daniels in particular.

Acknowledging that the statute discriminates on the basis of sex alone, the majority nevertheless rejects the defendant's challenge, by relying on "a strong presumption in favor of the constitutionality of acts of the legislature." The operation of the statute is said to be free from arbitrariness so long as there is any "rational basis" for the harsher punishments it imposes on women.

In my view, the "any rational basis" formula is inadequate to test the validity of the Muncy Act against the present challenge. That doctrine derives from a number of cases upholding economic regulatory measures or statutes not directly impinging on personal liberties or fundamental rights. See, e.g., *New York v. O'Neill,* 359 U.S. 1 (1959) (Uniform Law to Secure the Attendance of Witnesses in Criminal Proceedings Within or Without a State) ; *Loomis v. Philadelphia School District Board,* 376 Pa. 428, 103 A. 2d 769 (1954) (Act providing leave of absence with pay for public employees on active or reserve duty in the armed forces) ; *Daly v. Hemphill,* 411 Pa. 263, 191 A. 2d 835 (1963) (Magistrates Court Act) ; *Greenville Borough v. Guerrini,* 208 Pa. Superior Ct. 42, 220 A. 2d 366 (1966) (Borough sewer rental ordinance discriminating against apartment houses in favor of rooming houses and hotels).

Surely, the proper inquiry here, as in *McLaughlin v. Florida,* 379 U.S. 184 (1964), is whether there clearly appears in the relevant materials some "overriding

statutory purpose" requiring the imposition of more severe penalties on women than on men, and requiring the delegation of the sentencing power to a nonjudicial agency in whose hands it is manifestly susceptible of abuse.

The majority concedes that: "In certain cases, where a classification results in restricting personal liberties, the classification is specially suspect and the state in the first instance must show a subordinating interest that is compelling." Ante, p. 163. But it distinguishes the present case, apparently on the ground that since the legislature may punish those convicted of crime, inequalities in the nature of the punishment imposed are not subject to judicial scrutiny.

I find this distinction altogether untenable. The Supreme Court, in *Skinner v. Oklahoma,* 316 U.S. 535, 541 (1942), has already spoken on the question. In *Skinner,* an Oklahoma statute required the sterilization of "habitual criminals." That term included all persons three times convicted of felonies involving moral turpitude, but excepted persons convicted of embezzlement. The Court struck down the statute, as offensive to the Equal Protection clause, observing: "When the law lays an unequal hand upon those who have committed intrinsically the same quality of offense . . . it has made an invidious discrimination." Again, in *McLaughlin v. Florida,* supra at 192, the Court stated: "[In the context of a criminal statute] where the power of the state weighs most heavily on the individual or the group, *we must be especially sensitive to the policies of the Equal Protection clause . . . which were intended . . . to subject all persons 'to like punishments, pains, penalties . . . and exactions of every kind, and to no other.'* " (Emphasis supplied)

In my view, the imposition of an especially severe criminal sentence on a particular individual or group impinges on his liberty as substantially as legislative

action which denies him the right to vote, *Harper v. Virginia State Board of Elections,* 383 U.S. 663 (1966), or the right to attend an unsegregated school.

To justify such discriminatory treatment, the Commonwealth must demonstrate more than the fragmentary and tenuous theories presented to us. Absent any compelling psychological, statistical, or scientific data, we cannot, nor should we, sanction a legislative scheme which is patently arbitrary and manifestly unfair.[2]

The recent decision by the Supreme Court in *In the Matter of Gault,* 387 U.S. 1 (1967), reflects a similar concern that high-minded ideals may obscure a harsh reality. In considering the nature of the Juvenile Court, the Supreme Court stated: "[T]he highest motives and most enlightened impulses led to a peculiar system for juveniles, unknown to our law in any comparable context. The constitutional and theoretical basis for this peculiar system is—to say the least—debatable. And in practice . . . the results have not been entirely satisfactory. Juvenile court history has again

---

[2] Philadelphia District Attorney Arlen Specter has filed a candid and persuasive brief in support of the conclusion that the Muncy Act is unconstitutional. He offers the following excerpt from the work of a leading criminologist of fifty years ago to illustrate the philosophy underlying the statute:

"There is little doubt in the minds of those who have had much experience in dealing with women delinquents, that the fundamental fact is that they belong to the class of women who lead sexually immoral lives. . . .

"[Such a statute] would remove permanently from the community the feeble-minded delinquents who are now generally recognized as a social menace, and would relieve the state from the ever increasing burden of the support of their illegitimate children. Furthermore, . . . such a policy, thoroughly carried out, would do more to rid the streets . . . of soliciting, loitering, and public vice than anything that could be devised. There is nothing the common prostitute fears so greatly as to know that if she offends and is caught she will be subject to the possibility of prolonged confinement."

demonstrated that unbridled discretion, however benevolently motivated, is frequently a poor substitute for principle and procedure."

Similarly, under the guise of special rehabilitative treatment for women, the legislature, in the Muncy statute, has adopted a system which accomplishes little more than the imposition of harsher punishment for women offenders. As such, it denies them the Equal Protection of the laws guaranteed by the Constitution of the United States.

For these reasons, I would reverse.