402 F.2d 701
 UNITED STATES of America ex rel. William McARTHUR, H-4565,
v.
Alfred T. RUNDLE, Supt., Commonwealth of Pennsylvania on
behalf of A. T. Rundle, Superintendent, Appellant.
 No. 17021.
 United States Court of Appeals Third Circuit.
 Argued April 1, 1968.
Decided Oct. 15, 1968.
 
 Welsh S. White, Asst. Dist. Atty., Philadelphia, Pa. (Alan J. Davis, Asst. Dist. Atty., Chief, Appeals, Division, Richard A. Sprague, First Asst. Dist. Atty., Arlen Specter, Dist. Atty., Philadelphia, Pa., on the brief), for appellant.
 Charles H. Baron, Philadelphia, Pa. (Blank, Rudenko, Klaus & Rome, Philadelphia, Pa., on the brief), for appellee.
 Before KALODNER, GANEY and VAN DUSEN, Circuit Judges.
 OPINION OF THE COURT
 KALODNER, Circuit Judge.
 
 
 1
 The District Court entered an Order granting William McArthur's petition for a Writ of habeas corpus on its finding that evidence adduced at his state court trial was the product of an unlawful search and seizure in violation of his federal constitutional rights.[1] This appeal by the Commonwealth of Pennsylvania followed.
 
 
 2
 A three-count indictment was returned against McArthur at the March, 1965 term of the Court of Quarter Sessions, Philadelphia County, Pennsylvania; Count I charged him with burglary; Count II with larceny and Count III with receiving stolen goods.
 
 
 3
 McArthur was tried to a judge, without a jury, on May 6, 1965. He entered a plea of guilty to the receiving stolen goods count; and, following a trial, was adjudged guilty as to the burglary count, and not guilty as to the larceny count. He was then sentenced to imprisonment in a state penitentiary for a 3 to 6-year term.
 
 
 4
 McArthur did not appeal his conviction. He, however, a year or so later, filed a petition under the Pennsylvania Post-Conviction Hearing Act, 19 P.S. 1180-1 et seq., in a Philadelphia County Court. The petition was dismissed without hearing; the Superior Court of Pennsylvania affirmed, Commonwealth v. McArthur, 209 Pa.Super. 739, 226 A.2d 207 (1967), and the Supreme Court of Pennsylvania denied allocatur.
 
 
 5
 In his petition for habeas corpus relief in the District Court McArthur alleged, inter alia,[2] that his Fourth and Fourteenth Amendment rights had been violated in his state court trial, in the admission, over his defense counsel's objection, of evidence obtained in an illegal search and seizure.
 
 
 6
 The District Court, at the close of testimony in the instant proceeding, found that 'the search here was unwarranted and the evidence submitted at the trial violated the constitutional rights of the relator'.[3] It subsequently entered its Order granting habeas corpus relief.
 
 
 7
 Critical to our disposition is the following statement of the testimony3A bearing on the issue as to the mooted search and seizure:
 
 
 8
 At about 1:30 P.M., March 13, 1965, two Philadelphia policemen, Fenning and Jones, were patrolling an area in their police car. They were particularly on the look-out for traffic in 'untaxed white whiskey'. They saw four men seated in a parked Pontiac automobile and they appeared to be drinking. The officers decided to investigate. They stopped their car and approached the Pontiac; Jones on its left side and Fenning on its right. As they did so they were noticed by one of the four men, and one of them put down a glass or cup from which he had been drinking. Fenning testified that he observed a bottle on the back floor of the Pontiac which was subsequently found to be Gordon's gin. At the same time, according to Jone's testimony, he saw McArthur, who was seated on the back seat, trying to push a large brown envelope down 'between the seat of the Pontiac sedan'. Jones said he took the envelope from McArthur's hand even though he knew it did not contain any liquor, and asked him to get out of the automobile. McArthur did so and then started running; he was pursued by the officers, caught and arrested. The brown envelope contained a number of checks which were later identified as having been stolen from a retail store where McArthur had at one time been employed.
 
 
 9
 As earlier stated, the checks were admitted into evidence over objection by McArthur's counsel.
 
 
 10
 It does not appear from Jones' testimony that he saw the contents of the brown envelope before he took it from McArthur's hand, although he testified that the envelope 'was open' when he took it, and its contents then 'was in plain view'. Fenning testified only that he saw the contents of the envelope 'after' Jones had taken it from McArthur.
 
 
 11
 The Fourth Amendment, which is in the nature of a guarantee of privacy, forbids all unreasonable searches and seizures and it may be invoked by any citizen, whether innocent or guilty.[4] Its guarantees and the standards of reasonableness under it are applicable to the states through the 14th Amendment.[5]
 
 
 12
 Since in the instant case the challenged evidence was obtained in the course of a warrantless search, we are required to consider 'the concrete factual context' of its seizure.[6] We are further required to give a liberal construction to the Fourth Amendment in determining whether the facts establish that the challenged evidence in the instant case was obtained in an unreasonable search and seizure.[7]
 
 
 13
 These guide-line principles must be followed in determining whether there has been an unreasonable search and seizure in contravention of the Fourth Amendment, made applicable to the States by the 14th Amendment:
 
 
 14
 The Fourth Amendment 'protects people, not places',[8] and therefore applies as much to citizens on the streets as to those at home or elsewhere.[9]
 
 
 15
 Police conduct 'must be judged under the Reasonable Search and Seizure Clause of the Fourth Amendment'.[10]
 
 
 16
 A police officer 'is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate reasonable grounds for doing so'.[11]
 
 
 17
 ' Under our system suspicion is not enough for an officer to lay hands on a citizen'.[12]
 
 
 18
 A police search in contravention of constitutional guarantees 'is not made lawful by what it brings to light',[13] and 'in law it is good or bad when it starts and does not change character from its success'.[14]
 
 
 19
 A person by 'mere presence in a suspected car' does not lose immunities from search of his person to which he would otherwise be entitled.[15]
 
 
 20
 Applying the principles stated to the instant case, we are of the opinion that in the light of the prevailing circumstances the mooted checks were obtained by the police in the course of an unreasonable search and seizure and their admission into evidence, over timely objection, further contravened the Fourth Amendment, which forbids a conviction by use of evidence so obtained.[16]
 
 
 21
 Our determination that there was here an unreasonable, and therefore unlawful, search and seizure, is premised on the 'concrete factual context' as disclosed by the record.
 
 
 22
 The police officers were merely on the look-out for traffic in 'untaxed' liquor when they saw the four men drinking in the parked Pontiac car. Possession of 'untaxed' liquor is a misdemeanor under Pennsylvania law. 47 P.S. 4-494. The officers' inspection of the Pontiac disclosed only that the four men had been drinking from a bottle of Gordon's gin, lawfully purveyed in Pennsylvania. Officer Jones testified that as he approached the car 'I saw him (McArthur) take a brown envelope, which he had in his hand, and try to push it between the seat of this Pontiac sedan. I took it from his hand'. On cross-examination Jones testified that he 'knew there was no untaxed liquor in the envelope' when he took it from McArthur and that 'I opened it' and then found it contained several blank checks and a torn check, which it was subsequently ascertained had been stolen. Officer Fenning only observed that 'him (Jones) and the defendant (McArthur) was reaching, was grabbing for this envelope, and this envelope was a long brown envelope, and it was full-- it appeared full-- and it was partly opened * * * and it had 'a bunch of checks".
 
 
 23
 McArthur's action in attempting to 'push' the envelope into the back seat did not afford any reasonable basis for Jones' action in seizing it from his hand since Jones then 'knew' that it did not contain any liquor, taxed or otherwise. Jones may have been 'suspicious' of McArthur's conduct but there was no reasonable basis for that suspicion. As established by the above stated principles 'under our system suspicion is not enough for an officer to lay hands on a citizen'. The fact that the seizure brought to light fruits of a theft or robbery does not make lawful what was unlawful when it happened. As above stated, a police search and seizure in contravention of constitutional guarantees 'is not made lawful by what it brings to light', and 'in law it is good or bad when it starts and does not change its character from its success'.
 
 
 24
 The envelope as far as Jones knew when he seized it might have contained McArthur's private papers, love letters, checks or other confidential papers. Jones had no reason to believe when he seized the envelope that it contained fruits of unlawful conduct on McArthur's part; he had no reason to believe that McArthur had been engaged in unlawful conduct; and he was not conducting any investigation of any unlawful conduct other than the possession of untaxed liquor.
 
 
 25
 In Sibron v. State of New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), Sibron was convicted of the unlawful possession of heroin found in his pocket when he was searched by a New York policeman because he had been seen by the police conversing with a number of known drug addicts over an eighthour period.
 
 
 26
 In holding that there was no probable cause for the search because of the stated circumstances the court said in part at pages 62-63, 88 S.Ct. at page 1902:
 
 
 27
 'The officer was not acquainted with Sibron and had no information concerning him. He merely saw Sibron talking to a number of known narcotics addicts over a period of eight hours * * * (and) was completely ignorant regarding the content of these conversations, and * * * saw nothing pass between Sibron and the addicts. So far as he knew they might indeed 'have been talking about the World Series.' The inference that persons who talk to narcotics addicts are engaged in the criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's personal security. Nothing resembling probable cause existed until after the search had turned up the envelopes of heroin. It is axiomatic that an incident search may not precede an arrest and serve as part of its justification. E.g. Henry v. United States, 361 U.S. 98 (, 80 S.Ct. 168, 4 L.Ed.2d 134) (1959); Johnson v. United States, 333 U.S. 10, 16-17 (, 68 S.Ct. 367, 92 L.Ed. 436) (1948). Thus the search cannot be justified as incident to a lawful arrest.'
 
 
 28
 In Henry v. United States, cited in Sibron, federal officers who were investigating a theft from an interstate shipment of whiskey twice observed cartons being placed in a motor car in a residential area. They followed and stopped the car, arrested the petitioner and another man in it, searched the car, and found and seized cartons containing radios stolen from an interstate shipment. The officers did not have a warrant for search or arrest. At the petitioner's trial for unlawfully possessing radios stolen from an interstate shipment, his motion to suppress the evidence so seized was overruled and he was convicted. The Supreme Court reversed his conviction on its holding that the officers did not have probable cause for the arrest when they stopped the car; thus, the search was illegal.
 
 
 29
 In doing so, the Court, after pointing out that under the Fourth Amendment police cannot make an arrest or search without probable cause, said at page 104 of 361 U.S., at page 172 of 80 S.Ct.:
 
 
 30
 'The fact that packages have been stolen does not make every man who carries a package subject to arrest nor the package subject to seizure. The police must have reasonable grounds to believe that the particular package carried by the citizen is contraband. Its shape and design might at times be adequate. The weight of it and the manner in which it is carried might at times be enough. But there was nothing to indicate that the cartons here in issue probably contained liquor. The fact that they contained other contraband appeared only some hours after the arrest. What transpired at or after the time the car was stopped by the officers is, as we have said, irrelevant to the narrow issue before us. To repeat, an arrest is not justified by what the subsequent search discloses. Under our system suspicion is not enough for an officer to lay hands on a citizen. It is better, so the Fourth Amendment teaches, that the guilty sometimes go free than that citizens be subject to easy arrest.'[17]
 
 
 31
 It is readily apparent that in the instant case there was even less 'probable cause' for the police seizure of the envelope and its contents than there was for the condemned searches and seizures in Sibron and Henry, and that, standing alone, they compel our holding that McArthur's conviction on the burglary count must be held to be in contravention of his constitutional rights, and habeas corpus relief be granted as to that conviction.
 
 
 32
 The cases cited by the Commonwealth are inapposite here. They concern situations where it was held that police officers had reasonable grounds for their belief that some illegal activity was taking place when they made a warrantless search.
 
 
 33
 We must advert to the fact that the District Court in its Order of October 9, 1967, granting McArthur's petition for a writ of habeas corpus, ordered that he be released from confinement 'unless within thirty days of this date he is retried upon the charges of burglary and stolen goods.'
 
 
 34
 In its oral opinion, at the close of the habeas corpus hearing, the District Court, after announcing its finding that 'the search here was unwarranted and the evidence submitted at the trial violated the constitutional rights of this relator', made this further statement:
 
 
 35
 'I think the entry of the plea of guilty and the subsequent so-called trial was almost a travesty of justice.'
 
 
 36
 The District Court did not state the basis of its reason for condemning 'the entry of the plea of guilty' as to the receiving of stolen goods count.
 
 
 37
 McArthur did not raise any question with respect to the entry of his plea of guilty to the receiving of stolen goods count in his writ. He premised it solely on these grounds (1) 'admission in evidence of material obtained pursuant to an illegal search and seizure, over defense counsel's objection'; (2) 'the acceptance of a guilty plea of a lesser offense (receiving stolen goods) and the prosecution and conviction of a higher offense (burglary) in the same indictment, involving the same offense was unconstitutional,' and (3) 'abandonment of counsel at the trial level in not filing post-trial motions, constitutes, under the facts and circumstances, a denial of effective assistance of counsel.'
 
 
 38
 The trial record discloses that McArthur pleaded not guilty to all three counts of his indictment at his arraignment prior to the trial and that he withdrew his plea of not guilty to the receiving stolen goods count shortly after his trial began.
 
 
 39
 At the hearing on the habeas corpus petition, McArthur's trial counsel, a member of the staff of the Defender Association of Philadelphia, testified that he had advised McArthur to plead guilty to the receiving stolen goods count following conferences in which McArthur told him that he knew the checks had been stolen 'at the time' he received them, and further that he 'dropped them on the street and had run away' when the police appeared on the scene.
 
 
 40
 It is true that the state record discloses that the trial judge made no inquiry of McArthur designed to ascertain as to whether his guilty plea was voluntarily and knowingly made. That factor does not vitiate the plea since the totality of all surrounding circumstances must be considered in determining the voluntary nature and understanding of the plea.[18]
 
 
 41
 That being so, we hold that the District Court erred in its Order insofar as it related to the granting of habeas corpus relief on the stolen goods count.
 
 
 42
 This, too, must be said.
 
 
 43
 It appears that the Pennsylvania statute fixes a maximum penalty of five years imprisonment for receiving stolen property, 18 P.S. 4817, and twenty years imprisonment for burglary, 18 P.S. 4901. In the instant case the trial judge imposed a 3 to 6-year prison term without further specification.
 
 
 44
 Since we hold that the District Court did not err in finding that the burglary count conviction falls because it was obtained by use of evidence unlawfully obtained, the situation is presented that the 3 to 6-year sentence imposed is illegal since the maximum prison sentence on the receiving stolen goods count is five years. Under Pennsylvania law, 12 P.S. 1032, an illegal sentence may be vacated,[19] and McArthur may resort to the Pennsylvania courts for the imposition of a legal sentence.
 
 
 45
 For the reasons stated, the District Court's Order of October 9, 1967 will be vacated, and the cause will be remanded to the District Court with directions to enter an Order granting the petition for a writ of habeas corpus insofar as it relates to McArthur's conviction on the burglary count, unless the Commonwealth of Pennsylvania grants a new trial as to that count within 30 days thereafter.
 
 
 46
 The Court desires to note its appreciation of the commendable and indefatigable services rendered by Charles H. Baron, Esq., a member of the Philadelphia Bar, as court-appointed counsel for McArthur.
 
 
 
 [1]
 McArthur has been released from confinement on his own recognizance since the Commonwealth of Pennsylvania did not re-try him within the 30-day period fixed by the District Court in its Order granting his habeas corpus petition
 
 
 [2]
 The petition asserted two other grounds for relief, viz.: (1) that 'The acceptance of a guilty plea of a lesser offense (receiving stolen goods) and the prosecution and conviction of a higher offense (burglary) in the same indictment, involving the same offense, was unconstitutional'; and, (2) 'Abandonment of counsel at the trial level in not filing post-trial motions, constitutes, under the facts and circumstances, a denial of effective assistance of counsel'. The first of these grounds was not raised at McArthur's trial, but was asserted in his subsequent state court petition for post-conviction relief. As far as the record before us discloses, the second ground was never raised in the state courts
 
 
 [3]
 The District Court did not file a written opinion
 3A Testimony at the state trial bearing on the search and seizure issue was made part of the record in the instant habeas corpus proceeding.
 
 
 [4]
 Go-Bart Importing Company v. United States, 282 U.S. 344, 357, 51 S.Ct. 153, 75 L.Ed. 374 (1931)
 
 
 [5]
 Ker v. California, 374 U.S. 23, 30-34, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)
 
 
 [6]
 'The constitutional validity of a warrantless search is pre-eminently the sort of question which can only be decided in the concrete factual context of the individual case'. Sibron v. New York, 392 U.S. 40, 59, 88 S.Ct. 1889, 1901, 20 L.Ed.2d 917 (1968)
 
 
 [7]
 The '* * * constitutional provisions for the security of person and property should be liberally construed. * * * It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.' Boyd v. United States, 116 U.S. 616, 635, 6 S.Ct. 524, 535, 29 L.Ed. 746 (1886)
 
 
 [8]
 Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)
 
 
 [9]
 Terry v. Ohio, 392 U.S. 1, 8-9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)
 
 
 [10]
 Sibron v. New York, 392 U.S. 40, 62, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917 (1968)
 
 
 [11]
 Id., at page 64, 88 S.Ct. at page 1903
 
 
 [12]
 Henry v. United States, 361 U.S. 98, 104, 80 S.Ct. 168, 172, 4 L.Ed.2d 134 (1959)
 
 
 [13]
 Byars v. United States, 273 U.S. 28, 29, 47 S.Ct. 248, 71 L.Ed. 520 (1927)
 
 
 [14]
 United States v. Di Re, 332 U.S. 581, 595, 68 S.Ct. 222, 92 L.Ed. 210 (1948)
 
 
 [15]
 Id., at page 587, 68 S.Ct. at page 225
 
 
 [16]
 Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)
 
 
 [17]
 In United States v. Peisner, 311 F.2d 94, 5 A.L.R.3d 1196 (4 Cir. 1962) where it was held that the discovery of contraband during a warrantless search is not enough to support search without probable cause and that 'suspicion' is not enough to constitute probable cause for search without a warrant, the Court said (p. 101):
 'It may well be said that, absent consent of one in position to give consent, every warrantless search and seizure by a police officer is prima facie unreasonable unless and until there is a clear showing that, prior to the search, the officer had good reason to believe that property properly classified as contraband was contained in the place to be searched.'
 
 
 [18]
 United States ex rel. Smith v. Hendrick, 260 F.Supp. 235 (E.D.Pa.1966), aff'd per curiam, 378 F.2d 373 (3 Cir. 1967)
 
 
 [19]
 Commonwealth v. Daniels, 210 Pa.Super. 156, 232 A.2d 247 (1967)