STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. MARY A. COSTELLO, DEFENDANT-APPELLANT.

Argued April 5, 1971—Decided October 27, 1971.

*Mr. Joseph Asbell* argued the cause for defendant-appellant.

*Mr. I. Michael Heine,* Assistant Prosecutor (*Mr. A. Donald Bigley,* Camden County Prosecutor, attorney), and *Mr. John A. Brogan,* Deputy Attorney General (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney; *Mr. Barry H. Evenchick,* Deputy Attorney General, of counsel and on the brief), argued the cause for plaintiff-respondent.

The opinion of the Court was delivered by

HALL, J. This appeal constitutes a two-pronged attack upon a custodial sentence imposed by the Camden County Court following guilty pleas of defendant, a 39 year old female, to three indictments charging gambling offenses. The first prong is a claim that the sentence was excessive under the circumstances. The second is a contention that, in contrast to the sentencing provisions relating to male defendants, the statutory scheme for the custodial sentencing of female offenders arbitrarily discriminates against them and so violates the equal protection clause of the Fourteenth Amendment to the United States Constitution. The case is here by virtue of certification on our own motion of the appeal while pending in the Appellate Division. *R.* 2:12–1.

All of the offenses charged in the indictments arose out of the same set of facts and all are alleged to have been committed on the same day. One indictment was for book-

making, in violation of *N. J. S. A.* 2A:112-3. That section designates the crime as a misdemeanor, but contains a special punishment provision requiring, if a custodial sentence is imposed, that the imprisonment be in the state prison for not less than 1 year nor more than 5 years. A second indictment charged the keeping of a gambling resort in violation of the same section, carrying, of course, the same special imprisonment provision. The third charged possession of "papers, documents, slips or memoranda pertaining to the business of lottery or lottery policy," made a misdemeanor by *N. J. S. A.* 2A:121-3. Since this section contains no special punishment provision, the penalty is governed by *N. J. S. A.* 2A:85-7, which prescribes "a fine of not more than $1,000, or by imprisonment for not more than 3 years, or both" for all misdemeanors for which no punishment is specifically provided.

The trial court judge sentenced defendant on the bookmaking indictment to an indeterminate term at the New Jersey Reformatory for Women (now called the "Correctional Institution for Women", *L.* 1970, *c.* 300). Similar sentences, to run concurrently with the first, were imposed on the gambling resort and lottery indictments. This place of confinement is directed by *N. J. S. A.* 30:4-154, which provides:

Any female above the age of 16 years, convicted of a crime which would be punishable by imprisonment in the State Prison if she were a male, shall be committed to the Correctional Institution for Women * * *.

The effect of these indeterminate sentences is concurrent maximum terms of five years on the first two mentioned indictments and of three years on the third. This result is dictated by *N. J. S. A.* 30:4-155,[1] which requires in effect

---

[1] *N. J. S. A.* 30:4-155 reads as follows:

The several courts in sentencing to the Correctional Institution for Women shall not fix or limit the duration of the sentence, except

that all custodial sentences of women over the age of 16 years (except sentences to a county jail, penitentiary or workhouse as authorized by *N. J. S. A.* 2A:164–15), are to be to the Correctional Institution for Women for an indeterminate term not to exceed five years, or the statutory maximum for the crime if that is less (except in the case of murder or manslaughter). The court, however, may impose an indeterminate sentence greater than five years, but not to exceed the statutory maximum for the particular crime if the latter is longer than five years. Within these limits the actual length of time served is determined entirely by the institution's board of managers, who may end the term at any date between commitment and the applicable maximum.[2]

---

as otherwise provided for herein, but the time which the prisoner shall serve in the reformatory or on parole shall not exceed 5 years, except for the crimes of murder or manslaughter, or the maximum term provided by law for the offense of which the prisoner is convicted and sentenced if such maximum be less than 5 years; provided, however, that the court, in its discretion, for good cause shown, may impose a sentence greater than 5 years, but in no case greater than the maximum provided by law, and the commitment shall specify in every case the maximum of the sentence so imposed. The term may be terminated by the board of managers in accordance with its rules and regulations.

Any female convicted of murder or manslaughter shall be sentenced to confinement in the Correctional Institution for Women at Clinton. Every such sentence shall be for a maximum and minimum term, except sentences for life. The maximum term shall not be in excess of the maximum term prescribed by law for the offense for which the offender was convicted, and the minimum term shall not be less than the minimum term prescribed by law for the offense for which the offender was convicted, and in no event less than 1 year. Commutation time for good behavior, as provided by section 30:4–140 of the Revised Statutes, shall be allowed on both such maximum and minimum terms.

Nothing herein contained shall be construed to apply to the sentence of death.

[2] *N. J. S. A.* 2A:112–3 (bookmaking and keeping a gambling resort) prescribes both a mandatory minimum imprisonment term and the place of confinement. It is one of the few statutes so providing. (Two others are *N. J. S. A.* 2A:151–61, causing explosion with intent

We deal first with the second prong of defendant's attack, i. e., the contention that the New Jersey statutory scheme for the sentencing of female offenders violates the equal protection clause. The question is an important one and novel in this state. The United States Supreme Court has not ruled upon it. It was not raised below and no record has been made with respect to it. We feel unable to consider it properly without a record and therefore remand for the making of one. Some amplification of the issue will demonstrate what we mean and why.

The Correctional Institution for Women in this state is, by reason of the relatively small number of female offenders, our only institution for their incarceration (except county jails, penitentiaries and workhouses and the Training School for Girls, which is limited, *N. J. S. A.* 30:4–157.9, to the confinement of female juvenile delinquents of the age of eight years or more and under the age of 17 years). Pur-

---

to injure, and *N. J. S. A.* 21:1A–142, possession of explosives or bombs for unlawful purpose). It does not make imprisonment mandatory. The sentencing court is still left with the power "to suspend the imposition or execution of sentence, and also to place the defendant on probation * * * for a period of not less than 1 year nor more than 5 years" under the general authority granted by *N. J. S. A.* 2A:168–1 or, under *N. J. S. A.* 2A:112–3 itself, to impose a fine of not less than $1000 nor more than $5000 (in connection with a suspended sentence and probation or alone). But if a custodial sentence is imposed, it must be for not less than one year. This mandatory minimum in itself, and apart from the statutory designation of the state prison as the place of confinement, precludes sentences to county jails (which accept both men and women prisoners) for a violation of this section, since sentences to such institutions must be for less than one year and in first class counties may not exceed six months. *N. J. S. A.* 2A:164–15. Again apart from the designation of the state prison in the bookmaking statute, *N. J. S. A.* 2A:164–15 also provides that every person sentenced for one year or longer shall be imprisoned in the state prison and *N. J. S. A.* 2A:164–17 requires sentences to the state prison to be for a minimum and maximum term except sentences for life. However, *N. J. S. A.* 2A:164–15 also authorizes sentences of not less than one year nor more than 18 months in counties having penitentiaries or workhouses (which also accept both men and women prisoners) to be served in such institu-

suant to *N. J. S. A.* 30:4–154, it in fact serves several classes of offenders:

1. Female juveniles above the age of 16 years and under the age of 18 who have committed an offense which, if committed by an adult male, would amount to a crime punishable by imprisonment in the state prison and who have been treated and sentenced as juveniles.

2. Females above 16 but under 25 years of age convicted of an offense punishable by imprisonment in any county penitentiary or workhouse. (Commitment to the women's institution under this classification is permissive and not mandatory.)

3. Female adults between the ages of 18 and 30 years (as well as juveniles between 16 and 18 years of age who have been transferred for adult prosecution, *N. J. S. A.* 2A:4–15) who have committed a crime punishable by imprisonment in the state prison if the offender were

---

tions instead of the state prison. The question arises, but is not presented in this case (Camden County has neither a penitentiary nor a workhouse) whether a violator of *N. J. S. A.* 2A:112–3, male or female, may be imprisoned in a county penitentiary or workhouse for a term within the above mentioned limits instead of in state prison or the women's correctional institution. It is at least interesting to note that the source of *N. J. S. A.* 2A:112–3 is *L.* 1898, *c.* 235, § 65 and that of *N. J. S. A.* 2A:164–15, *L.* 1898, *c.* 237, § 68, both approved the same day. The analogous question also arises, but is likewise not present here, whether a male violator of *N. J. S. A.* 2A:112–3 between the ages of 15 and 30, not previously sentenced to a state prison in this or any other state, may be sentenced to the Youth Correctional Institution Complex (called the "New Jersey Reformatory for Males" prior to *L.* 1970, *c.* 300) instead of state prison. *N. J. S. A.* 30:4–147 authorizes such place of commitment for such males "who [have] been convicted of a crime punishable by imprisonment in the State Prison." Under *N. J. S. A.* 30:4–148, such commitments must be for an indeterminate term. with the maximum and termination thereof subject to provisions identical with those in *N. J. S. A.* 30:4–155 governing confinement of women (except as to the provision in the latter section relating to the sentencing of females for murder or manslaughter). (*N. J. S. A.* 30:4–147 and 148 had their origin in *L.* 1901, *c.* 104, § 7 and 9).

There can be no doubt that this female defendant could have been sentenced to a term of less than one year in the county jail on the

a male, but who, if male, would have been eligible for and would have been committed to the Youth Correctional Institution Complex (male reformatory) instead.

4. Females between the ages of 18 and 30 years of age (as well as juveniles between 16 and 18 years of age transferred for adult prosecution) who have committed a crime punishable by imprisonment in the state prison if the offender were a male, but who, if male, would not have been eligible for or if eligible, would not for other reasons, have been committed to the Youth Correctional Institution Complex, but would have been sentenced to the state prison.

5. Females above the age of 30 years who have committed a crime punishable by imprisonment in the state prison if the offender were a male and would have been required to be committed to that institution if male by reason of their age.

■ While defendant's claim of unlawful discrimination in the sentencing of women offenders is expressed very broadly, it necessarily is applicable only to offenders under classes 4 and 5, *i. e.,* those who, if male, would have been sentenced to the state prison. Defendant, by reason of age, falls in class 5. Female and male juvenile offenders under the age of 16 are treated the same with respect to the duration of confinement. *N. J. S. A.* 2A:4–37(b). The same is true as to males and females in the 18–30 age group sentenced, if males, directly to the reformatory system or, in the case of females, to the women's institution but who would have been sentenced to the reformatory system if they had been males. In each case, as we have indicated, the sentence is indeterminate, subject to a maximum previously described, with release at any time between commitment and the expiration of the maximum dependent upon action of

lottery indictment (if sentence were suspended on the bookmaking and gambling resort charges), since the applicable sentencing provision, *N. J. S. A.* 2A:85–7, does not specify any mandatory minimum of imprisonment or place of confinement.

the institution's board of managers. *N. J. S. A.* 30:4–148 (males) ; *N. J. S. A.* 30:4–155 (females).[3]

There is, however, a considerable distinction between the nature and effect of sentences of males to the state prison and of females to the Correctional Institution for Women who would have been committed to the state prison had they been males (except with respect to women sentenced to minimum-maximum terms or life for murder or manslaughter pursuant to *N. J. S. A.* 30:4–155). First, in the case of males, minimum and maximum terms are fixed by the judge and the maximum may be less than the statutory maximum permitted for the particular crime. In the case of females, the sentence must be for an indeterminate term with the maximum fixed by *N. J. S. A.* 30:4–155 at five years or that prescribed by the statute governing the particular crime if such is less than five years. The sentencing judge may not prescribe a lesser maximum (*State v. Lavender,* 113 *N. J. Super.* 576 (App. Div. 1971)), but he may, pursuant to the cited section, for good cause, direct a greater maximum up to that authorized by the statute governing the crime. Second, the minimum-maximum sentences of male inmates of the state prison are reduced for "continuous orderly deportment" in accordance with a schedule prescribed in *N. J. S. A.* 30:4–140. Comparable inmates of the women's institution receive no such benefit. (As to sentence credits for work performed, see *N. J. S. A.* 30:4–92.) Third, male inmates of the state prison are eligible for parole consideration by the State Parole Board when a certain statutorily designated portion of the sentence has been served. *N. J. S. A.* 30:4–123.10 and 123.12. (This does

---

[3]Judges sentencing a female in the 18 to 30 age group to confinement in the women's institution do not, we understand, indicate whether the sentence is on the basis that if the offender were male, confinement would have been in the reformatory complex or on the basis that it would have been in the state prison. In view of the contention in this case, we think it advisable that judges indicate hereafter which is the basis when imposing sentences on females in this age group.

not, of course, mean that every inmate will be released on parole when he is first eligible for consideration.) There is no such provision relating to inmates of the women's institution; as to them, as we have said, release and consideration therefor is entirely in the hands of the board of managers without any statutory directions or guidelines.

These distinctions, in essence, form the basis of defendant's claim of denial of equal protection because of discrimination on the basis of sex. The specific result she seeks is a requirement that she receive a minimum-maximum sentence, fixed by the judge, the same as if she were a male being sentenced to the state prison. The contention may be made more concrete by an example. Defendant *could* be held on the bookmaking conviction for as long as five years (although it is most unlikely that she would be). A first offender male, convicted of the same crime, would likely receive a state prison sentence of not less than one nor more than two years. He could not be confined for more than two years, less good behavior and work credits, and, assuming maximum such credits, would be eligible for parole, and, considering the nature of the offense, quite likely paroled in 4 months and 28 days. See Administrative Office of the Courts, *Sentencing Manual for Judges* (July 1971 edition), Appendix B.

Defendant bottoms her position on the decision of the Pennsylvania Supreme Court in *Commonwealth v. Daniel,* 430 *Pa.* 642, 243 *A.* 2d 400 (1968), commented upon in 82 *Harvard Law Review* 921 (1969). That state had a statutory female sentencing scheme substantially comparable to that of New Jersey, at least with respect to offenders falling in classes 4 and 5 described above. An equal protection challenge on the basis of sex discrimination was made to the statute on its face. A divided intermediate appellate court rejected the challenge and sustained the scheme. *Commonwealth v. Daniels,* 210 *Pa. Super.* 156, 232 *A.* 2d 247 (1967). The Supreme Court reversed, finding, without any proofs on the subject, that the scheme was devoid of

reasonable grounds of differences as between the sexes and invalid under the Fourteenth Amendment. We have found no other case so holding,[4] and there are decisions in other jurisdictions concluding that disparate legislative sentencing schemes based upon sex are not constitutionally invalid. *State v. Heilman,* 105 *Kan.* 139, 181 P. 630 (1919), 8 *A. L. R.* 848; *Platt v. Commonwealth,* 256 *Mass.* 539, 152 *N. E.* 914 (1926); *Ex parte Brady,* 116 *Ohio St.* 512, 157 *N. E.* 69 (1927); *Ex parte Gosselin,* 141 *Me.* 412, 44 *A.* 2*d* 882 (1945), appeal dismissed 328 *U. S.* 817, 66 *S. Ct.* 982, 90 *L. Ed.* 1599 (1946). *Cf. Wark v. State,* 266 *A.* 2*d* 62 (Me. 1970), *cert.* denied 400 *U. S.* 952, 91 *S. Ct.* 255, 27 *L. Ed.* 2*d* 259 (1970). These cases, generally speaking, reasoned that the legislature could legitimately conclude that female criminals were basically different from male criminals, that they were more amenable and responsive to rehabilitation and reform — which might, however, require a longer period of confinement in a different type of institution — and that therefore the legislature could validly differentiate between sexes with respect to the length of incarceration and the method of the determination thereof.

As we have stated, the equal protection challenge here is presented for the first time on appeal and without any record. We think the issue cannot properly be determined on the bald approach of an attack on the face of the statutory scheme. While some information has been furnished us by the State *ex parte,* in letter form, as to the nature of the women's institution, its rehabilitative, vocational and work release programs in contrast to those in effect in male institutions and figures as to the general dura-

---

[4]Three recent cases have held invalid the Connecticut scheme, but there the statutory provisions permitted the possibility of a greater *maximum sentence* for women than for men for the same offense, which does not exist under the New Jersey provisions. *United States ex rel. Robinson v. York,* 281 *F. Supp.* 8 (*D. Conn.* 1968); *United States ex rel. Sumrell v. York,* 288 *F. Supp.* 955 (D. Conn. 1968); *Liberti v. York,* 28 *Conn. Sup.* 9, 246 *A.* 2*d* 106 (Super. Ct. 1968).

tion of female confinement, we think such a method of presentation of reasons for a differentiation in treatment between the sexes is neither appropriate nor complete enough in view of the importance of the question. While on the face difference in sex cannot be called an evident basis for distinction, we think the State should have the opportunity to present formal proofs in support of its thesis that the statutory scheme rests on a solid basis from the standpoint of both societal benefit and the welfare of the affected females themselves.

We have in mind in this connection the modern approach by the United States Supreme Court to the application of the equal protection clause in this regard. That approach is aptly summarized in the previously cited *Harvard Law Review* note on *Daniels*:

> It is settled doctrine that a legislature may single out a class for unequal treatment only if some nexus exists between the classification and a valid legislative objective. A classic test is whether some set of facts can reasonably be conceived to exist which would justify the legislative distinction by showing its "rational relationship" to a legitimate public purpose. The rational relationship standard tolerates a loose connection between the classifying trait and the objective sought, and by its terms avoids the question whether the classification produces societal benefits which outweigh detriments imposed upon the selected class. But stricter standards of justification have been applied in at least two kinds of cases: those where the legislative classification is predicated on some characteristic such as race or nationality, raising a suspicion that no valid objective at all is being pursued; and those where the special treatment given a selected class impinges seriously on fundamental personal interests. In these cases a merely tenable justification has not sufficed. A substantial, empirically grounded justification has often been required. (82 *Harv. L. Rev.* at 921-922) (footnotes omitted).

See also the dissenting opinion of Judge Hoffman in the intermediate appellate phase of *Daniels*. 232 *A. 2d* at 253.

In our view disparate sentencing treatment based on sex falls in the category of special treatment given a selected class which "impinges seriously on fundamental personal interests" and therefore the burden rests on the State to

show a substantial justification for the female sentencing scheme as to classes 4 and 5 of our earlier categorization, empirically grounded to the greatest extent possible. Therefore, on the remand an adversary hearing should be held to permit the State to present evidence along the lines suggested, with the opportunity to defendant, of course, to introduce rebutting proofs. (Since the constitutionality of statutes would be involved, the Attorney General should be notified and given the opportunity to represent the State.) The judge will then make appropriate findings of fact and conclusions of law, from which the losing party may appeal. While we do not retain jurisdiction, a motion may be made to us in such event by the then appellant for direct certification as soon as the notice of appeal to the Appellate Division has been filed.

Defendant's claim that the sentence was excessive amounts to a contention that the trial court abused its discretion in imposing a custodial sentence because of the condition of her health and that of her husband and mother-in-law, who lived with her and were dependent on her, and because she had no criminal record. The transcript of the sentencing proceeding demonstrates that the judge conscientiously considered all factors, including her personal situation, presented to him by counsel and through the presentence report. In view of the fact that these were gambling offenses of some significance, and in the light of the principles laid down in *State v. Ivan,* 33 *N. J.* 197 (1960), we cannot say the court abused its discretion. The contention loses all force by reason of her counsel's concession at argument before us that the operation was affiliated with organized crime and was not an isolated offense involving only defendant.

However, at oral argument her counsel further stated that defendant was now ready and willing to cooperate with the prosecuting authorities by disclosing information as to those at a higher level with whom she was connected. We understand this offer had not previously been made. *Ivan*

(33 *N. J.* at 199, 203) intimates that, where such information is furnished by a convicted gambling operator at a lower level which is full, truthful and of value in assisting the pursuit of "higher-ups" in organized crime by law enforcement authorities, this fact should be taken into account by a sentencing judge in determining the nature of the punishment. In such a situation the judge might properly decide that a custodial sentence should not be imposed on a first offender. Although such an offer would not ordinarily be considered if first made at the appellate stage, we are of the view, since the case is being remanded for another reason, that defendant should have the right to make a motion to the trial court, within 20 days from the date of this opinion, *R.* 3 :21–10, for reconsideration of the sentence on this ground. If the motion and disclosure are made, the prosecutor should promptly report the nature and result of the disclosure to the trial court, after which the sentence may be reconsidered in the light thereof under the cited rule. We should add that if such reconsideration results in a new sentence other than commitment to the Correctional Institution for Women, the issue of the constitutionality of the statutory female sentencing scheme will thereby become moot and the determination of that question need not be further pursued.

Remanded.

*For remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*Opposed*—None.