STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ANN MARIE CHAMBERS, DEFENDANT-APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. DORIS VACCA, DEFENDANT-RESPONDENT.

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. VIOLA CANFORA, DEFENDANT-APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. KATHERINE E. PURSGLOVE, DEFENDANT-APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. DOROTHY COGLIANO, DEFENDANT-APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. DOROTHY C. VERSACE, DEFENDANT-APPELLANT.

Argued May 8, 1973—Decided June 26, 1973.

*Mr. Edward Roy Rosen,* Deputy Attorney General, argued the cause for the State of New Jersey (*Mr. John A. Brogan,* and *Mr. Alfred J. Luciani,* Deputy Attorneys General, on the brief; *Mr. George A. Kugler, Jr.,* Attorney General of New Jersey, attorney).

*Mr. Herman J. Ziegler* argued the cause for appellant Canfora and respondent Vacca.

*Mrs. Annamay T. Sheppard* argued the cause for respondent Vacca and *amicus curiae* American Civil Liberties Union.

*Mr. Benjamin Asbell* argued the cause for appellant Pursglove (*Messrs. Asbell, Ambrose, Ergood & Asbell,* attorneys).

*Mr. Harlan L. Schlossberg* appeared for appellant Cogliano (*Mr. Avrom J. Gold* on the brief; *Messrs. Mandelbaum, Mandelbaum & Gold,* attorneys).

*Ms. Jane G. Kleinfeld,* Asst. Deputy Public Defender, appeared for appellant Versace *(Ms. Susan T. Sinins,* Assistant Deputy Public Defender, on the brief; *Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Mr. Charles Camp Cotton* appeared for appellant Chambers.

The opinion of the Court was delivered by

SULLIVAN, J. These six cases, consolidated on appeal and certified while pending unheard in the Appellate Division, are a sequel to *State v. Costello,* 59 *N. J.* 334 (1971) wherein the Court questioned the constitutionality, on equal protection grounds, of the present New Jersey statutory provisions for the custodial sentencing of female criminal offenders insofar as they require the sentencing of a female offender for an indeterminate term in a situation where a male offender would be sentenced to State Prison for a minimum-maximum term for the same offense.[1] The statutory provisions in question are set forth in full in *Costello* and need only be summarized.

Generally, all female offenders who are given custodial sentences (except those sentenced to a county jail, penitentiary or workhouse), are sentenced to the Correctional Institution for Women for an indeterminate term not to exceed five years or the statutory maximum for the crime if that is less. (A female convicted of murder or manslaughter must be sentenced for a minimum-maximum term, unless the sentence is for life.) If the statutory maximum for the particular crime is longer than five years the court may impose an indeterminate sentence greater than five

---

[1] Male offenders between the ages of 15 and 30 years convicted of a crime punishable by imprisonment in State Prison may be sentenced to the Youth Correctional Institutional Complex under certain circumstances. Such a sentence is for an indeterminate term similar in effect to sentences imposed on females.

years and up to the statutory maximum for the crime. Within these limits, the actual length of time to be served by a particular female inmate is determined entirely by the institution's board of managers, who may end the term at any date between commitment and the applicable maximum.

A male offender, on the other hand, even though convicted of a similar crime, if he is sentenced to State Prison receives a minimum-maximum term (except for life imprisonment) and is subject to release under specified statutory standards. The disparity is discussed by Justice Hall in Costello as follows:

"* * * First, in the case of males, minimum and maximum terms are fixed by the judge and the maximum may be less than the statutory maximum permitted for the particular crime. In the case of females, the sentence must be for an indeterminate term with the maximum fixed by *N. J. S. A.* 30:4–155 at five years or that prescribed by the statute governing the particular crime if such is less than five years. The sentencing judge may not prescribe a lesser maximum (*State v. Lavender,* 113 *N. J. Super.* 576 (App. Div. 1971)), but he may, pursuant to the cited section, for good cause, direct a greater maximum up to that authorized by the statute governing the crime. Second, the minimum-maximum sentences of male inmates of the state prison are reduced for 'continuous orderly deportment' in accordance with a schedule prescribed in *N. J. S. A.* 30:4–140. Comparable inmates of the women's institution receive no such benefit. (As to sentence credits for work performed, see *N. J. S. A.* 30:4–92.) Third, male inmates of the state prison are eligible for parole consideration by the State Parole Board when a certain statutorily designated portion of the sentence has been served. *N. J. S. A.* 30:4–123.10 and 123.12. (This does not, of course, mean that every inmate will be released on parole when he is first eligible for consideration.) There is no such provision relating to inmates of the women's institution; as to them, as we have said, release and consideration therefor is entirely in the hands of the board of managers without any statutory directions or guidelines." 59 *N. J.* at 342–343.

As an example of what can happen under the two statutory schemes, Justice Hall pointed to the female defendant Costello who had pleaded guilty to bookmaking and two ancillary charges and received the mandatory indeterminate sentence.

"* * * Defendant *could* be held on the bookmaking conviction for as long as five years (although it is most unlikely that she would be). A first offender male, convicted of the same crime, would likely receive a state prison sentence of not less than one nor more than two years. He could not be confined for more than two years, less good behavior and work credits, and, assuming maximum such credits, would be eligible for parole, and, considering the nature of the offense, quite likely paroled in 4 months and 28 days. See Administrative Office of Courts, *Sentencing Manual for Judges* (July 1971 edition), Appendix B." 59 *N. J.* at 343.

In *Costello,* 59 *N. J.* at 345, we said that the statutory provisions for disparate sentencing based on sex fell into the category of special treatment given a selected class which "impinges seriously on fundamental personal interests" and required a substantial justification empirically grounded to the greatest extent possible. However, we recognized that the question had been raised for the first time on appeal and without any record. We concluded that the issue could not properly be determined on the bold approach of an attack on the face of the statutory scheme and that the State should have the opportunity to present formal proofs in support of its thesis that the statutory scheme rests on a solid basis from the standpoint of both societal benefit and the welfare of the females themselves. Accordingly, we remanded for a full adversary hearing to be followed by appropriate findings and conclusions.

Following the remand defendant Costello cooperated with the prosecuting authorities, see 59 *N. J. supra* at 346, and was resentenced to the Camden County jail for a term of three months so that in her case the constitutional issue became moot. However, the same question has been raised in each of the six appeals now before us. All six cases involve females who had either pleaded guilty to gambling charges or were tried and found guilty of gambling offenses. Five of the six female defendants were over 30 years of age. One, defendant Versace, was under 30 years of age. All of them received custodial sentences for an indeterminate term.

In one of the cases, *Vacca,* the defendant challenged the constitutionality of her indeterminate sentence by a petition for post-conviction relief and a full adversary, *Costello*-type hearing was held at which the State sought to establish a legal basis for the disparate sentencing schemes. At the conclusion of the hearing the trial court, in summary, found there was an absence of empirical data to justify the State's position. He declared the indeterminate sentencing scheme under *N. J. S. A.* 30:4–155 relating to women over 30 years of age to be unconstitutional[2] and ordered that defendant Vacca be resentenced for a minimum-maximum term. The State has appealed this order and decision. In the other five cases the defendants prosecute appeals challenging the constitutionality of the disparate statutory sentencing schemes. As heretofore noted, all these appeals have been consolidated.

For reasons hereinafter set forth, we conclude that the statutory provisions (*N. J. S. A.* 30:4–155) for the sentencing of a female offender to an indeterminate term are unconstitutional in a situation where a male offender convicted of the same offense would be sentenced to State Prison for a minimum-maximum term.[3]

As we noted in *Costello, supra,* 59 *N. J.* at 344, a number of jurisdictions have held that disparate sentencing schemes based on sex are not constitutionally invalid. The rationale of these decisions is that female criminals were more amenable and responsive to rehabilitation and reform than males, but might require a longer period of confinement in a different type of institution. One case holds to the con-

---

[2]The trial court's reasoning would also invalidate indeterminate sentencing of women between the ages of 16 and 30 years who, if they were male, would have been sentenced to State Prison for a minimum-maximum term.

[3]We do not have occasion to consider whether disparate sentencing based on *age* has 14th Amendment implications.

trary, finding no "reasonable and justifiable difference or deterrents between men and women which would justify" disparate sentencing schemes. *Commonwealth v. Daniel,* 430 *Pa.* 642, 243 *A.* 2d 400, 404 (1968).

At the post-conviction hearing in *Vacca,* the State attempted to satisfy the burden of showing a substantial empirically grounded justification for the disparate statutory sentencing schemes. Evidence was presented as to the physical facilities available and how the program for female inmates operates, its aim being rehabilitation. It was shown that female inmates are easier to control and require less security measures. However, almost all the witnesses agreed that there was no sound penological basis justifying indeterminate sentences for females and minimum-maximum sentences for males for the same offense. The real thrust of the State's proofs was that indeterminate sentences were preferable for both males and females since they provided both an incentive as well as an opportunity to achieve rehabilitation. It was suggested that a statistically lower rate of recidivism for females showed they were more amenable to rehabilitation. However, the validity of this conclusion was rendered questionable because of variances in the method of compiling statistics for males and females respectively. Most of the witnesses affirmatively stated that they could find no basis for concluding that it takes longer to rehabilitate females than to rehabilitate males, or that females were better subjects for rehabilitation than males.

The State contends, on the basis of statistical data, that females sentenced to indeterminate terms do not actually serve longer sentences than males do for the same offense. In truth, the available data does not support the State's position, but, even if it were the fact, the potentiality for a particular female serving a longer sentence than a male for the same offense would be present.

██ Generally, legislative selection of a class for special treatment can be justified where there is some rational basis

between the classification and the object sought to be achieved. However, certain classifications by their very nature are inherently suspect and will be subjected to close judicial scrutiny as to whether a fundamental constitutional right is being impaired. *Graham v. Richardson*, 403 *U. S.* 365, 376, 91 S. Ct. 1848, 1854, 29 *L. Ed.* 2d 534, 544 (1971).

Here involved is confinement in a penal institution — a restraint on one's liberty, one of the most basic human rights. The proposition that a female offender, for the same offense, can be lawfully confined longer than a male solely because she is a female would be unconstitutional on its face. The rationale for the classification and the different sentencing procedure — that females are better subjects for rehabilitation, thereby justifying a potentially longer period of detention for that purpose — finds little or no support, empirical or otherwise, in the record. *Cf. Frontiero v. Richardson*, 411 *U. S.* 677, 93 S. Ct. 1764, 36 *L. Ed.* 2d 583 (1973); *Reed v. Reed*, 404 *U. S.* 71, 92 S. Ct. 251, 30 *L. Ed.* 2d 225 (1971).

Analyzing the proofs, the most that has been shown is that there are differences in the emotional behavior of men and women. However, basically, there are no innate differences in capacity for intellectual achievement, self-perception or self-control, or the ability to change attitude and behavior, adjust to social norms and accept responsibility.

■ To the extent the provisions of *N. J. S. A.* 30 :4–155 provide for disparate sentencing of female offenders, they violate the equal protection clause of the Fourteenth Amendment of the United States Constitution and are hereby declared to be void. A female offender must receive the same sentencing treatment a male offender would receive for the same offense. Moreover, where a sentence fixing a minimum-maximum term is imposed on a female, she shall be entitled, in addition to work credits, to have remitted from her sentence, for continuous orderly deportment, the progres-

sive time credits indicated in the schedule in *N. J. S. A.* 30 :4–140.[4]

The history of sentencing statutes shows that special sentencing treatment for women is an outgrowth of a change in the legislative attitude toward youthful offenders. Prior to 1895 all persons convicted of a crime were sentenced to State Prison for a definite term. No distinction was made because of age or sex. In 1895 a separate reformatory for young males between the ages of 16-30 was established. *L.* 1895, *c.* 357, and by *L.* 1901, *c.* 104, it was provided that the court in sentencing to the Reformatory should not fix or limit the duration of sentence. The basis for the establishment of a facility other than State Prison for youthful offenders with confinement for an indefinite term was the hope that the associations there, together with suitable treatment and training, would more likely foster rehabilitation. See *State v. Horton,* 45 *N. J. Super.* 44, 47–48 (App. Div. 1957). Termination of confinement (subject to the statutory maximum term for the offense) was dependent, *inter alia,* upon accomplishment of rehabilitation. *In re Zienowicz,* 12 *N. J. Super.* 563, 571 (Cty. Ct. 1951).

The foregoing type of special treatment was applied to women by *L.* 1910, *c.* 72, which established a Reformatory for Women, ordered the transfer of all women from State Prison to the new facility, and required that the court in sentencing to the Reformatory for Women not fix or limit the duration of sentence.

In 1911 a minimum-maximum term sentence was introduced and made applicable to all sentences to State Prison, *L.* 1911, *c.* 191. However, women were no longer confined there.

---

[4]The proposed *New Jersey Penal Code* eliminates disparate sentencing based on sex. All *persons* are treated alike for purposes of sentencing. Only separate places of confinement, whether reformatory or imprisonment, are required. The Code does permit special sentencing of young adult offenders based on their age. See generally Section 2C, Chapter 43.

Thus it will be seen that the special sentencing provided for women was a departure from the original statutory plan of equal sentencing treatment for both men and women. In striking down that departure as a denial of equal protection we are left with a sentencing scheme applicable to every person regardless of sex.

■ This brings us to the question of the proper disposition of the six cases before us. In five of the six cases, *Chambers, Vacca, Canfora, Pursglove* and *Cogliano,* the female defendants were over 30 years of age and were sentenced to serve custodial sentences at the Correctional Institution for Women. Since a male defendant over 30 years of age given a custodial sentence for the same crimes would be sentenced for a minimum-maximum term at State Prison, these defendants are to be resentenced and given sentences for minimum-maximum terms. In one of these five cases, *Canfora,* the defendant was originally sentenced for a term of 1 to 2 years at the Correctional Institution for Women. This sentence was declared illegal by the Appellate Division and defendant was then resentenced for an indeterminate term at the same institution. In resentencing this defendant pursuant to the mandate of this Court, the trial court should be cognizant of the minimum-maximum term originally imposed.

■ In the sixth case, *Versace,* the female defendant was under 30 years of age at the time she was originally sentenced for an indeterminate term at the Correctional Institution for Women. On her appeal the Appellate Division remanded the matter to the trial court to determine whether, if she had been a male, she would have received an indeterminate reformatory sentence or a minimum-maximum State Prison sentence. See *Costello, supra,* 59 *N. J.* at 342, n. 3. On the remand the trial court stated that if she had been a male, under the circumstances, it would have imposed a sentence of 1 to 1½ years at State Prison. The foregoing requires that this defendant be resentenced for

a minimum-maximum term at the Correctional Institution for Women. In doing so, the sentencing judge should be cognizant of the minimum-maximum term the trial court said it would have imposed had defendant been a male.

■ Next, we consider the question of other female offenders sentenced to serve or serving custodial intermediate sentences at the Correctional Institution for Women. Females convicted of murder or manslaughter are given minimum-maximum terms unless their sentences were for life. Of the remaining offenders, not all of them are eligible to have their indeterminate sentences changed to minimum-maximum terms, and some, even though they may fall within the scope of this opinion, may prefer to stay with the indeterminate sentences imposed. The choice is theirs.

The State is to give prompt written notice to each female sentenced to serve, or now serving, an indeterminate sentence at the Correctional Institution. If the female was more than 30 years of age at the time of sentencing, she shall be notified that she has the right to be resentenced for a minimum-maximum term, but must make application therefor within 60 days after receipt of the notice. If the female was under 30 years of age at the time of sentencing, she shall be notified that she has the right to apply to the trial court for a determination whether, had she been a male, she would have been sentenced to the Reformatory Complex or State Prison. Said application must be made within 60 days after receipt of the notice. If it is determined that the sentence would have been to State Prison, she shall be resentenced for a minimum-maximum term.

■ Finally, we consider future sentencing of female offenders. The standard must be equal treatment without regard to sex. A female offender under 30 years of age given a custodial sentence at the Institution shall receive an indeterminate sentence in a situation where, if she were a male, she would have been sentenced to the Reformatory Complex. If the sentence for a male would have been to State Prison,

the female shall be sentenced for a minimum-maximum term at the Institution. Females more than 30 years of age and sentenced for a custodial term to the Institution, shall have a minimum-maximum fixed. (Females convicted of murder or manslaughter are now required to be sentenced for minimum-maximum terms unless a life sentence is imposed. *N. J. S. A.* 30:4–155).

Appellants Chambers, Pursglove, Cogliano and Versace also argue that the custodial sentences imposed on them are manifestly excessive. We have reviewed the record in each case, including the presentence report, and conclude that the imposition of a custodial sentence on each of these defendants is not unduly punitive.

CONFORD, P. J. A. D., Temporarily Assigned (concurring). I join the opinion of the Court, but would add the following. The rationale of the plurality opinion of the United States Supreme Court in *Frontiero v. Richardson,* 411 U. S. 677, 93 S. Ct. 1764, 36 L. Ed. 2d 583 (1973), satisfies me that where an interest of the magnitude of freedom from or minimization of penal incarceration is concerned an individual female cannot constitutionally be given more severe sentencing treatment for the same offense than that by law accorded males as a class on the basis of any characteristics thought or even proved to be applicable to females generally, or as to most of them.

I would therefore join in the decision of the court even if the record here justified the factual conclusion that most female offenders, or female offenders generally, are better subjects for rehabilitation than males, or less recidivist, or that a longer period of detention would promote the chances for rehabilitation of female offenders generally as opposed to male offenders generally.

*In State v. Vacca for affirmance*—Chief Justice WEIN-TRAUB, Justices JACOBS, PROCTOR, HALL, MOUNTAIN and SULLIVAN, and Judge CONFORD—7.

 

*For reversal*—None.

*In all other cases for affirmance and remand with directions*—Chief Justice WEINTRAUB, Justices JACOBS, PROCTOR, MOUNTAIN and SULLIVAN, and Judges CONFORD and COLLESTER—7.

*For reversal*—None.