143 N.J. Super. 73 (1976)
362 A.2d 1171
STATE OF NEW JERSEY, IN THE INTEREST OF G.T. JUVENILE-APPELLANT.
STATE OF NEW JERSEY, IN THE INTEREST OF J.V.B., JUVENILE-APPELLANT.
STATE OF NEW JERSEY, IN THE INTEREST OF G.D., JUVENILE-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 8, 1976.
Decided July 12, 1976.
*74 Before Judges KOLOVSKY, BISCHOFF and BOTTER.
Mr. Stanford M. Singer, Assistant Deputy Public Defender, argued the cause for all three appellants (Mr. Stanley C. Van Ness, Public Defender, attorney).
Ms. Sara A. Friedman, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Prosecutor of Essex County, attorney).
The opinion of the court was delivered by BOTTER, J.A.D.
These three appeals were consolidated for argument and accelerated by order of the court. *75 They involve a common question as to the meaning of the term "age of majority" in N.J.S.A. 2A:4-48(c). N.J.S.A. 2A:4-48[1] established the means for prosecuting a juvenile offender as an adult, by waiving jurisdiction of the juvenile court and referring the case to a court with jurisdiction over crimes committed by adults, providing the court finds that: the juvenile was 16 or 17 years of age at the time he probably committed a certain type of delinquent act, such as a homicide or other violent crime against a person, and prosecution as an adult is required to protect the public and "there are no reasonable prospects for rehabilitation of the juvenile prior to his attaining the age of majority by use of the procedures, services and facilities available to the court."
The question is whether the Legislature intended "age of majority" to mean age 18 or 21 as the standard for determining the reasonable prospects for the offender's rehabilitation under a juvenile court disposition.
*76 For purposes of prosecution for acts of delinquency or as a juvenile in need of supervision (defined by N.J.S.A. 2A:4-45), a juvenile is a person "under the age of 18 years," and an adult is defined as a person who is "18 years of age or older." N.J.S.A. 2A:4-43(a) and (b). N.J.S.A. 2A:4-46 provides that the Juvenile and Domestic Relations Court has exclusive jurisdiction in all cases where a juvenile is charged with an act of delinquency.[2] However, in the case of juveniles who are 16 or 17 years of age, jurisdiction of the juvenile court may be waived voluntarily (N.J.S.A. 2A:4-49) or involuntarily (N.J.S.A. 2A:4-48).
Thus, all persons who commit criminal acts when they are 16 or 17 years of age may be prosecuted either as juveniles or as adults. A person under age 16 at the time of the offense can be prosecuted only as a juvenile, and all persons 18 or older can be prosecuted only as adults. N.J.S.A. 2A:4-46c; see In re Smigelski, 30 N.J. 513, 522 (1959).
These provisions were part of the revision of the laws dealing with juveniles and the jurisdiction and proceedings of the Juvenile and Domestic Relations Court which went into effect on March 1, 1974. L. 1973, c. 306; N.J.S.A. 2A:4-42 et seq. (hereinafter referred to as the 1973 Juvenile Act). When that act was adopted age 18 was the age of majority for most purposes of the law: for civil rights and disabilities (N.J.S.A. 9:17B-1, enacted by L. 1972, c. 81, effective January 1, 1973), and for criminal responsibility (except that age 16 would apply if juvenile court jurisdiction is waived, In re Smigelski, supra, 30 N.J. at 522). However, it does not appear that the Legislature intended "age of majority" to mean age 18 for the purposes of N.J.S.A. 2A:4-48(c).
*77 The 1973 Juvenile Act changed the conditions for waiver of juvenile court jurisdiction. The need to show that the juvenile cannot be rehabilitated before reaching the age of majority was not contained in the prior law.[3] Therefore we must consider the term "majority" in relation to other parts of the 1973 Juvenile Act, as well as other laws in effect at that time. See State v. Carter, 64 N.J. 382, 390-391 (1974); State v. Brown, 22 N.J. 405, 415 (1956).
The juvenile court can make numerous and varied dispositions of an adjudicated delinquent. These include release to the supervision of a parent or guardian, probation for a period not exceeding three years, or commitment to an institution for purposes of rehabilitation for an indeterminate term not exceeding three years, or longer for a homicide, subject to the maximum term provided by law for the offense (if committed by an adult). N.J.S.A. 2A:4-61. However, all dispositions other than commitment to an institution for rehabilitation are limited in duration to the period ending when the juvenile reaches 18 years of age, or one year from the date of the order, whichever is later. N.J.S.A. 2A:4-63.[4] Thus, while age 18 is significant in determining the duration of juvenile dispositions, the 1973 Juvenile Act clearly contemplates dispositions for rehabilitative purposes *78 of 16 and 17-year-old delinquents for periods extending beyond their 18th birthday. Where the disposition is confinement, the period of confinement and parole may be as long as three years, or longer for homicides, regardless of the delinquent's age. Other dispositions may continue beyond the delinquent's 18th birthday, for as long as one year from the date of disposition.
Since the delinquents with whom we are concerned will be more than 16 years of age at the time of disposition it would be unduly restrictive to hold that the likelihood of rehabilitation must be evaluated in terms of the short interval before they reach age 18. Some will be approaching 18 at the time of disposition and others will have passed their 18th birthday, depending on their age when the offense was committed and the time it takes for disposition of the particular case. It would be unreasonable to conclude, therefore, that the Legislature decreed that any delinquent who could not be rehabilitated by age 18 must be prosecuted as an adult. More likely the Legislature had age 21 in mind as the "age of majority" for the purposes of N.J.S.A. 2A:4-48c.
This conclusion does not conflict with the provisions which define "adult" offenses as those committed by persons who are 18 years of age or older. N.J.S.A. 2A:4-43(b); N.J.S.A. 2A:4-46(c). If the Legislature intended "age of majority" as used in N.J.S.A. 2A:4-48(c) to coincide with age 18, it could have said so or it could have used the phrase, "prior to his becoming an adult," utilizing the definition given to the term adult in a preceding provision of the same law. See N.J.S.A. 2A:4-43(b). Age 18 was used consistently in the act to mark the boundary between criminal conduct and that which may be treated as an act of delinquency. To evaluate possibilities for rehabilitation, however, the term "age of majority" was used, signifying a distinction between that term and age 18.
Nor does this conclusion conflict with the intent of the law which lowered the age of majority to 18 for most other purposes. That law, N.J.S.A. 9:17B-1 et seq. (L. 1972, c. *79 81, effective January 1, 1973), pertains primarily to the age of majority for purposes of civil and contractual rights, obligations and privileges. Cf. New Jersey State Policemen's Benevolent Ass'n v. Morristown, 65 N.J. 160, 168 (1974). Specific exceptions applicable to the criminal field were provided as follows:
The Legislature by this act does not intend to:
a. Effect the release from confinement or transfer from one institution to another of a person attaining age 18 rather than 21 years;
b. Affect the right of a court to exercise its discretion in not sentencing a person between 18 and 21 years of age to State Prison * * *.[5] [N.J.S.A. 9:17B-2]
An exception was also made "with respect to the right of a court to take any action it deems appropriate and in the interest of a person under 21 years of age, or to require a change in action heretofore taken by a court with respect to a person under 21 years of age * * *." N.J.S.A. 9:17B-3. This provision demonstrates the intention to continue a court's discretion in protecting the interests of persons under 21. It clearly accommodates the interpretation of N.J.S.A. 2A:4-48(c) that age of majority remains 21 for the purposes of evaluating the rehabilitative potential of dispositional means available to the juvenile court. Therefore, we conclude that the Legislature intended "age of majority" in N.J.S.A. 2A:4-48(c) to mean age 21.

As to G.T.
G.T. was born on October 2, 1957. He was charged with an act of delinquency in committing a robbery while armed with a gun on December 27, 1974, when he was 17 years of *80 age. The State moved for waiver of jurisdiction (R. 5:9-5(b)) and, after a hearing, the motion was granted. Defendant was thereafter indicted, but a stay of the trial was ordered so that G.T. could prosecute this appeal.
At the jurisdictional hearing evidence was offered tending to establish probable cause to believe that G.T. committed a delinquent act constituting "an offense against the person in an aggressive, violent and willful manner." N.J.S.A. 2A:4-48 b. The evidence showed that G.T. and an accomplice, while in an automobile, approached a 15-year-old victim, that G.T. confronted him with a gun and in response the victim gave G.T. a box of doughnuts and gave his accomplice five dollars. The two then drove off but were later stopped by the police and a loaded gun was found in the vehicle matching the description given by the victim.
G.T. had committed numerous prior acts of delinquency which included a breaking and entry and possession of a stolen vehicle at age 13. More than once he was put on probation. He was placed in the Newark Field Program and in an outpatient group treatment center; he was repeatedly truant and was considered incorrigible. He committed various offenses while on probation, such as assault and battery, larceny and being on premises with intent to steal. (He was admitted to the Youth House in 1971, 1972, 1973 and 1974 on various charges, including an atrocious assault and battery upon his sister). He was dismissed from probation with an unsatisfactory adjustment. Eventually he was committed to the Training School for Boys at Jamesburg from May 1973 to July 12, 1974, and was on parole from this institution at the time of this offense. At the jurisdictional hearing his parole officer testified that his prospects for rehabilitation within the juvenile system were good; however, the officer was relatively inexperienced and testified that G.T.'s past record should not be considered in evaluating his future prospects for rehabilitation.
The juvenile court judge made appropriate findings and concluded that the statutory conditions for waiver of jurisdiction *81 were satisfied. Without making specific reference to the age of G.T. or the time within which he might be rehabilitated by facilities available to the juvenile court, the judge held that those facilities, services and proceedings had been exhausted unsuccessfully in an effort to rehabilitate G.T. He concluded that there was no likelihood that G.T. would be rehabilitated in the future by such facilities and services.
The findings of the juvenile judge have ample support in the evidence and we see no reason to disturb them. State v. Johnson, 42 N.J. 146, 162 (1964). While specific reference was not made to age 21 as the limiting time for the juvenile's rehabilitation, to avoid any doubt we exercise original jurisdiction (R. 2:10-5; State v. Johnson, supra) and waive the jurisdiction of the juvenile court.
G.T. also contends that he was denied due process and the right to a speedy trial by reason of the 2 1/2-month delay between the offense and the jurisdictional hearing. This contention is wholly lacking in merit. Nor is there merit to the contention that the burden of persuasion was shifted to G.T.R. 2:11-3(e) (2).
The order waiving jurisdiction of the juvenile court in the case of G.T. is affirmed.

As to J.V.B.
J.V.B. was born on July 27, 1957. He was charged with the robbery and murder of a 71-year-old woman in East Orange on January 17, 1975 when he was 17 1/2 years of age. The victim was found in her bathtub with a rope around her neck, wrists and ankles and there were signs of theft in the apartment. The rope matched rope used in other crimes committed in East Orange which led police to a female suspect who implicated J.V.B. in the murder. J.V.B. was arrested in the apartment of the female suspect and he had a .22-calibre air pistol and the butt end of a shotgun in his possession at the time.
*82 The juvenile court judge ruled that the State sustained its burden of proving probable cause and other requirements for waiver of jurisdiction. J.V.B. had previously been sentenced in February 1973 to the Youth Correctional Institution Complex at Yardville for offenses committed in 1972, including breaking and entering and assault and battery. He was paroled in March 1974. He was again charged with various offenses, including armed robbery, and was returned to the Youth Complex as a parole violator.
The juvenile judge found that there were no reasonable prospects for J.V.B.'s rehabilitation within the juvenile system. He did not specifically use age 21 as the time limitation, but did refer to J.V.B.'s age as being close to the 18-year-old limit of juvenile jurisdiction, and that "the attempt to start at the end of the period or age limit is a much more difficult if not impossible program for rehabilitation * * *." These comments suggest he was referring to a possible disposition extending beyond age 18 but determined, nevertheless, that it would not accomplish J.V.B.'s rehabilitation.
We find ample support in the evidence for the determination of the juvenile court judge of probable cause and in waiving jurisdiction in favor of prosecution of J.V.B. as an adult. Exercising our own jurisdiction (R. 2:10-5) to the extent necessary to avoid any question as to the basis for the determination below, we affirm the waiver of jurisdiction of the juvenile court.

As to G.D.
G.D. was born on January 7, 1958. He was charged with the commission of forcible rape of a female on February 14, 1975 when he was 17 years of age. The victim identified G.D. and testified that he and four companions forced their way into her apartment, assaulted her and subjected her to multiple rapes. Her assailants were armed with a knife and stick; she was threatened and struck, and asked where she kept her money.
*83 After the group left G.D. returned, having taken the keys to the apartment. The rape victim hit him on the head with a bottle and he fled, bleeding, and was apprehended shortly thereafter.
G.D. had committed prior delinquent acts, including robbery, assault and battery, carrying a concealed weapon and breaking and entering. He was on probation when arrested for the present offense. Evidence was offered on his behalf to establish his potential for rehabilitation by the use of facilities available to the juvenile court.
The juvenile court judge found that the conditions for waiver of jurisdiction were satisfied. He rejected the rehabilitation program which witnesses proposed for G.D. He considered that G.D. could be confined at the Youth Complex in Yardville, whether adjudicated as a delinquent juvenile or convicted as an adult. He considered the structured environment of that institution preferable to other facilities and concluded that it might be necessary to keep G.D. at that institution for a longer period, as a convicted adult, than as an adjudicated delinquent. Compare N.J.S.A. 2A:4-61(h) (providing a three-year maximum) with N.J.S.A. 30:4-148 (providing a five-year maximum, unless a longer term is imposed by the sentencing judge within the limits fixed for the crime). Thus he ruled that jurisdiction should be waived.
In reaching this conclusion the juvenile judge emphasized that G.D. was within six months of his 18th birthday. He did not preclude a disposition beyond age 18, saying, "* * * granted the court has jurisdiction beyond the age of 18 for rehabilitative purposes of the juvenile * * *." Nevertheless, he waived jurisdiction. We find ample evidence to support the findings and conclusions of the juvenile judge (State v. Johnson, supra) and no merit to the contention that the burden of persuasion was unfairly shifted to the juvenile. To avoid any doubt as to the standard employed below in evaluating G.D.'s prospects for rehabilitation, we exercise our *84 original jurisdiction (R. 2:10-5) and waive the jurisdiction of the juvenile court.
The failure of the juvenile judges in these cases to specify the meaning ascribed to the term "age of majority" for rehabilitative purposes may be accounted for by counsel's failure to raise this issue in the juvenile court. After carefully reviewing the records before us we are satisfied that the jurisdiction of the juvenile court was properly waived in each case.
The determinations and orders of the Juvenile and Domestic Relations Court are affirmed.
NOTES
[1] N.J.S.A. 2A:4-48 provides:

The juvenile and domestic relations court may, without the consent of the juvenile, waive jurisdiction over a case and refer that case to the appropriate court and prosecuting authority having jurisdiction if it finds, after hearing, that:
a. The juvenile was 16 years of age or older at the time of the charged delinquent act;
b. There is probable cause to believe that the juvenile committed a delinquent act which would constitute homicide, treason if committed by an adult or committed an offense against the person in an aggressive, violent and willful manner or committed a delinquent act which would have been a violation of section 19 of the Controlled Dangerous Substances Act (P.L. 1970, c. 226; C. 24:21-19) if committed by an adult and the juvenile, at the time he committed the act, was not addicted to a narcotic drug as that term is defined in section 2 of the Controlled Dangerous Substances Act (P.L. 1970, c. 226; C. 24:21-2); and
c. The court is satisfied that adequate protection of the public requires waiver and is satisfied there are no reasonable prospects for rehabilitation of the juvenile prior to his attaining the age of majority by use of the procedures, services and facilities available to the court.
[2] An act of delinquency is defined to include an act which, if committed by an adult, would constitute a homicide or other crime. N.J.S.A. 2A:4-44.
[3] N.J.S.A. 2A:4-15, repealed by L. 1973, c. 306, § 27, provided in part:

If it shall appear to the satisfaction of the juvenile and domestic relations court that a case of juvenile delinquency as defined in section 2A:4-14 of this title committed by any juvenile of the age of 16 or 17 years, should not be dealt with by the court either because of the fact that the person is an habitual offender, or has been charged with an offense of a heinous nature, under circumstances which may require the imposition of a sentence rather than the disposition permitted by this chapter for the welfare of society, then the court may refer such case to the county prosecutor of the county wherein the court is situate.
[4] This section could be interpreted to limit the three-year maximum period of probation authorized by N.J.S.A. 2A:4-61(c) in the case of a juvenile who will reach age 18 before a three-year period would expire.
[5] Actually, the possibility of being sentenced to an indeterminate term at the Youth Correctional Institution Complex rather than State Prison applies to all males convicted of a crime who are between 15 and 30 years of age. N.J.S.A. 30:4-147. As to females, see N.J.S.A. 30:4-154; State v. Chambers, 63 N.J. 287 (1973).